James ODDIE, Edward Cwiertniewicz, John Penzak, Oscar King, Harry C. Bremmer, Plaintiffs,

v.

ROSS GEAR AND TOOL COMPANY, Inc., an Indiana corporation, Defendant.

Civ. No. 21350.

United States District Court E. D. Michigan, S. D.

July 5, 1961.

Harold A. Cranefield, Redmond H. Roche, Jr., Gordon A. Gregory, John A. Fillion, Detroit, Mich., for plaintiffs.

Beaumont, Smith & Harris, Detroit, Mich., for defendant.

KAESS, District Judge.

Plaintiffs are employees who bring this action in behalf of themselves and their fellow seniority employees of the Gemmer Manufacturing Company, a division of Ross Gear and Tool Company, Inc., an Indiana corporation. They bring this action purportedly in behalf of themselves and others similarly situated for a declaration of rights, together with temporary injunctive relief, pending final adjudication, and any money damages that may be earned upon a final hearing.

The defendant is in the business of manufacturing steering gears for automobiles, etc., and is an Indiana corporation. The defendant company has two plants presently in operation, one its original plant in Indiana, and the acquired division, known as the Gemmer Manufacturing Company of Detroit, Michigan.

The Gemmer Division has recognized the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America UAW (AFL–CIO) and its Local Union Number 80, as exclusive bargaining agent of its employees at the Detroit plant, and had entered into a collective bargaining agreement with such Union.

The defendant company, Ross Gear and Tool Company, Inc., acquired certain property in Lebanon, Tennessee, and on January 13, 1961 posted a notice advising the employees of the Gemmer Division that it had formed a Tennessee Division and that some products then manufactured in Detroit would be transferred to Tennessee. Later, however, it became apparent, and there seems to be no doubt, that the entire Gemmer Division, lock stock and barrel, is to be moved to Lebanon, Tennessee, and to be called the Tennessee Division of the Ross Gear and Tool Company, Inc. On May 22, 1961

the defendant announced its decision to terminate the plant operations conducted by the Gemmer Division in Detroit and further advised that the equipment and operations are to be transferred to its new division, beginning July 1, 1961, with production being concluded in the Gemmer Division on or about September 2, 1961. Thus the transfer or move will be in two phases—one beginning July 1, 1961 and the concluding phase on September 2, 1961. The first phase, however, will not affect or terminate the employment of the plaintiffs or affect their seniority rights. However the defendant advises that all seniority rights will be terminated on September 2, 1961 and the Detroit plant is to be closed.

The basic facts seem clear in this respect. The defendant company proposes to close its plant at Detroit, Michigan, and move it to Lebanon, Tennessee.

If this were all, it would thus far be clear that the defendant could do practically whatever it chose to do, at least with respect to its labor and employment relations, but there is and has been a labor contract in existence for over twenty years, its present expiration being October 1, 1961. The defendant company and its predecessor have been a party to the contract, as has been Local Number 80 of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America UAW (AFL–CIO).

During this time certain valuable rights have been created by contract, to both the employer and the employee. Perhaps those rights gravitate more to one side than the other, but certainly affect both.

In, and by reason of, the past and present contracts, the employees became beneficiaries of certain rights, to quote but one for the moment, certain pension rights or retirement benefits which can and do survive the contract and are so contemplated by the parties.

The issue here is, do seniority rights survive by analogy as an earned right?

In Zdanok v. Glidden Co., 2 Cir., 288 F.2d 99, 103, seniority is called a "vested" right, or one "earned", as a type of unemployment insurance "earned, and acquired, by continuous service".

The court goes on to say, however, at page 103, that "the *employee* owning the right, *or his authorized Union agent*, could bargain away the employee's right[s]" (Italics ours).

In our case here the contract is still in force. Neither the Union nor the employees have sought to change it—nor perhaps would they. But the issue at the moment evolves about the proposition as to whether or not the contract can be annulled unilaterally by the mere moving of the defendant's plant to another state.

To be consistent with the Glidden case, supra, if that were the only issue, the answer would obviously be "No". Therefore this court must determine whether or not the contract now in force, by its terms may have bargained away that right.

It becomes essential to determine the provisions of the contract and to determine its intended meaning. First we must look to the contract as a whole and attempt to apply normal meaning to the words themselves, and then, if they be ambiguous, inquire into the history and surrounding circumstances to elicit their meaning and the intention of the parties.

The present contract of 1958 says, following its opening preamble and in its first section, entitled "Recognition":

"1. The Company recognizes the union as the exclusive representative of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit for the purpose of collective bargaining on matters of wages, hours and conditions of employment * * *."

Evidence was submitted by the defendant which disclosed that in those contracts duly negotiated by the Union *prior*

to the 1951 contract, the following clause was in its place:

"1. The Company recognizes the Union as the exclusive representative of its employees for the purpose of collective bargaining on matters of wages, hours and conditions of employment * * *."

In the collective bargaining agreement of 1951 (as well as in those thereafter) the above opening provision of the contract was changed to read as follows:

"(1) The Company recognizes the Union as the exclusive representative of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit for the purpose of collective bargaining on the matter of wages, hours and conditions of employment * * *."

This last quoted language remained and was used verbatim as a part of the 1955 and 1958 contracts, the latter being the one here involved and expiring some three months from now.

During the term of the 1955 to 1958 contract Gemmer Manufacturing Company was acquired by the defendant Ross Gear and Tool Company, Inc., an Indiana Corporation, and Gemmer continued to be operated as a division of Ross Gear and Tool Company, Inc.

Defendant submits that during the negotiation of the 1958 contract (that which is now in force and expiring October 1, 1961) the Union submitted the following as a substitute for the above Section 1:

"Recognition

"1. The Company recognizes the union as the exclusive representative of its employees in its plant or plants which are located in the greater Detroit area for the purpose of collective bargaining on matters of wages, hours and conditions of employment, excluding those mentioned in paragraph 2.

"(a) In the event the company creates other plants or facilities regardless of location under the administration of the company, the union shall be recognized for the purpose of collective bargaining on matters of wages, hours, conditions of employment, seniority transfers, and all matters embodied in this agreement.

"(b) In the event the company moves its operations to other locations, the union shall be recognized for the purpose of collective bargaining on matters of wages, hours and conditions of employment. Should this condition occur this matter will be subject to negotiations between the company and the union, such as moving costs of employees, severance pay, seniority transfers, and all other matters pertaining to this situation."

Such proposal was declined by the defendant and Section 1 of the contract remained as it had been prior thereto and since the 1951 contract.

The normal inference that one would draw from such a proposed substitute section, and then to compare it with the Section 1 of the contract then in force (as quoted on page 5, from 1951 contract) promptly leads one to believe that the parties had negotiated on the problem of moving to Lebanon, Tennessee, or at least moving somewhere, and had agreed that all matters involved in the contract would and could have only force and effect within the limitations of the city of Detroit. In effect, it appeared the Union had conceded and bargained away all the benefits of the employees in the event the plant moved from within the city limits of Detroit.

However, testimony taken in this respect showed the situation surrounding the negotiations in 1951 to be quite different. Gemmer had another plant in the area at that time, which was located just over the city limits of Detroit, an experimental plant, which the Union sought to obtain within its bargaining agreement. The Company declined and the rephrasing of Section 1 was in con-

templation of that situation, and not any proposed move of the plant.

Referring above to the proposed change involving moving or changing of locations as stated and proposed by the Union in its negotiations in 1958 agreement (the one presently in force), testimony disclosed that with the acquisition of the Gemmer Division by the defendant Ross Gear and Tool Company, Inc., the corporation had two plants, one its original plant in Indiana and the acquired plant, Gemmer Manufacturing Company in Detroit. Because of various reasons (none important here) there had been many rumors reaching the ears of the Union that the defendant would move or, more properly, consolidate its Detroit operation with the Indiana plant, thus operating to jeopardize the interest of the local Union. In order to anticipate such a change, the Local proposed the section referred to, involving moving or transferring. Further testimony intimated that the Union did not press the provision on learning another Local of the same International Union, United Automobile, Aircraft and Agricultural Implement Workers of America UAW (AFL–CIO) was the bargaining agent at the Indiana plant and felt they could probably work out any problems between them covering seniority.

Thus, on closer observation it seems quite clear that the intent of the parties was not that which at first look might have bargained away certain rights and benefits of the employees, since the reasons and purposes for the contract changes were well known to the parties, but were for reasons *other* than in contemplation of any possible move of the Detroit plant to another distinct location.

Therefore, this Court is of the opinion whatever emphasis the defendant now chooses to place on Section 1 goes for naught, and we must then return to the contract to determine whether the seniority rights and benefits of the plaintiffs are in jeopardy. This Court feels bound by the Glidden case, supra, and its reasoning, and since there is nothing within the contract now in force to the contrary, those seniority rights are to continue.

We next come to the geographical situation, as advanced by the defendant. Defendant further claims that the limitations within Section 1 terminate the seniority benefits of the plaintiffs on its moving its plant to Tennessee. We cannot agree. Section 1 applies only with respect to the "recognition" of the *Union*, and has no geographical limitations as to the benefits of the *employees* and their rights under the contract.

This Court is reluctant to reach any conclusion with respect to the effect the company's move might have on the Union itself, particularly since the Union itself has instituted similar litigation pending before another Judge of this Court. However, in order to make our meaning clear, it might be that since the recognition clause goes only to the *Union* as an entity, it could follow that its right to represent the employees in Tennessee has been bargained away by Section 1. However, we must leave any such decision in the determination of the other case.

To reach our conclusion this Court's reasoning is based on this premise. The Gemmer Division plant is the same plant wherever it is moved, in spite of the fact it might be known by a different name. Mere change of form will not change the substance, nor will mere change of location. This is the same plant, same machinery and equipment, same operation, same officers and supervisors, but in a new climate. The benefits created for the employees under that contract should not be said to be unilaterally terminated by mere change of location. Such logic seems the more reasonable and just in the light of the real meaning of Section 1 and more specifically when the contract still has until October 1, 1961 to run. The mere fact that there is a termination date in a collective bargaining agreement does not terminate all the rights and benefits of the employees under that agreement, but merely designates a certain time agreed upon by the parties when there would

be further negotiations concerning those rights and benefits. Therefore the fact that this agreement in question has a termination date does not automatically remove all of the rights and benefits previously acquired by the employees. Although, as in this case, the agreement itself with the Union as a bargaining agent might have been terminated by the move to Lebanon, the rights and benefits that have accrued to the individual employees persist and cannot be unilaterally denied by the employer without the employees' consent. Among these rights and benefits would be included the right of seniority or, as more specifically involved in this case, *the right to be rehired by the employer after a lay-off, as stated in the contract.* Nothing herein, however, should be construed to mean that at the time of the expiration of the contract, new provisions may not be agreed upon, to the extent of an entirely new contract, nor that the employees may not select a new bargaining agent, or that they can bargain away, alter or enlarge any of their rights, even to the extent of having a Union.

■ Our conclusion implies that the Union, as an identity, might only be able to represent the plaintiffs and those similarly situated in Detroit, but we are satisfied that it does not terminate all the rights of the plaintiffs created by a contract that has been in existence for some twenty years and upwards, and which was made in contemplation of those future rights.

It is the Court's conclusion:

1. That the collective bargaining agreement grants the employees certain benefits and rights that become "vested" in the sense that they cannot be unilaterally denied without their consent or other agreed means, such as the right to discharge.

2. That these rights extend beyond the time limitations of the collective bargaining agreement.

3. That these rights apply to a "plant" regardless of physical location under this contract and previous contracts.

4. That these rights include, among other things, seniority rights for the purpose of rehiring after layoff (which could go beyond an anniversary date) as provided in the agreement.

5. That the limitation as set forth in Section 1, the recognition clause of this agreement, applies only to the extent of Union representation and does not affect future benefits and rights of employees agreed upon by contract.

Therefore, the contract being not to the contrary, and pursuant to the holding in the Glidden case, supra, defendant has an obligation and duty to rehire on the basis of seniority those employees laid off in Detroit when that plant's operations are removed to Lebanon, Tennessee.

Should this decision, as requested by plaintiffs on these undisputed facts, not be dispositive under the Federal Declaratory Judgment Act (28 U.S.C.A. § 2201), plaintiffs may request the Court to take such further action as might be necessary at the time.