**Melvin JOHNSON, Vester Inman, Emmett Sigler, William Piner and Delberg Johnson, Plaintiffs,**

v.

**ARCHER–DANIELS–MIDLAND COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 22016.**

United States District Court
E. D. Michigan, S. D.
April 3, 1962.

Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr, Detroit, Mich. (James E. Haggerty and Edward P. Echlin, Detroit, Mich., of counsel), for plaintiffs.

Dickinson, Wright, McKean & Cudlip, Detroit, Mich., and Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill. (Willis S. Ryza, Chicago, Ill., of counsel), for defendant.

McCREE, District Judge.

This litigation concerns an impending plant relocation. At issue are employment rights at the new plant. The matter is before the court on defendant's motion to dismiss the complaint.

The allegations contained in the complaint may be summarized as follows. Plaintiffs are five Michigan citizens who are presently employed at defendant's chemical plant in the City of Wyandotte, Michigan. Defendant is a Delaware corporation, having its principal place of business in Minneapolis, Minnesota. Plaintiffs sue on behalf of themselves and their fellow seniority employees, asserting jurisdiction on the basis of diversity of citizenship.

Since 1948, Local Union No. 12240, United Mine Workers, has been recognized as the exclusive bargaining representative for the employees at defendant's Wyandotte plant and has negotiated a succession of collective bargaining agreements. The current agreement was entered into on April 9, 1959, for a term ending on April 16, 1962.

On May 17, 1960, without prior consultation or notice, defendant advised the officers of the local union that the company had decided to close its Wyandotte plant within the next two years and planned to transfer operations to a new plant to be constructed at Peoria, Illinois. Defendant further indicated that the shutdown of the Wyandotte plant would be accomplished gradually and not abruptly. When asked whether Wyandotte employees would be permitted to transfer to Peoria, the company representatives replied in the negative.

However, defendant did agree to negotiate with reference to establishing a program of severance pay. On November 1, 1960, an amendment captioned "Addendum" to the 1959 collective bargaining agreement was executed. (The original agreement and the "Addendum", establishing a severance pay program, are incorporated in the complaint as plaintiffs' exhibits.)

Various operations already have been removed to Peoria, and it has been announced that remaining operations at Wyandotte soon will be transferred.

On or about December 18, 1961, defendant, cautioning that this was not to be understood as a commitment to employ the applicants, distributed among its Wyandotte employees application forms for employment at Peoria.

Plaintiffs complain of defendant's refusal to offer them jobs at the Peoria Chemical Center on the basis of seniority acquired at the Wyandotte plant. They contend that defendant is improperly taking the position that the amendment to the collective bargaining agreement effected a release of their seniority rights. Plaintiffs allege that they are entitled to employment at Peoria "at the same or similar positions and at the same hourly rate of pay, together with all 'fringe' benefits provided for in said collective bargaining agreement, all of which rights and privileges survive both defendant's transfer of its 'Wyandotte Plant' operation or operations to its new 'Peoria Plant' and the termination of the current collective bargaining agreement."

They seek a preliminary injunction restraining defendant from hiring new employees for its Peoria operation until it has recalled plaintiffs in accordance with their seniority. Upon final hearing they seek a declaration of the rights and duties of the parties and judgment for any money damages they may by that time have sustained.

The motion to dismiss asserts the following grounds:

1. Failure to state a cause of action, in that the collective bargaining agreement, as amended, expressly terminates the alleged seniority rights of plaintiffs in the event of a final plant shutdown in Wyandotte.

2. Failure to allege exhaustion of contractual remedies.

3. Improper party plaintiffs, in that the real party in interest for purpose of bringing suit for defendant's employees in a representative capacity is the local union.

4. Failure to join the local union as an indispensable party to the action, inasmuch as the local is a party to the contract upon which the action is predicated.

■ The effect of plant relocation is capable of regulation by express agreement of the parties. Thus, if a collective bargaining agreement specifically provides that plant relocation shall not terminate the contract, the employer can be compelled by injunction to honor the provisions of the agreement at his new location. Local 408, Auto Workers v. Crescent Brass & Pin Co., 46 L.R.R.M. 2975 (E.D.Mich.1960).

■ Even in the absence of a contract provision such as appears in Crescent Brass, it has been held that an employer's shutdown and transfer of operations to a new location does not extinguish the collective bargaining agreement the term of which has not expired. Metal Polishers, Buffers, Platers and Helpers Intern Union, Local 44, A.F.L.–C.I.O. v. Viking Equipment Co., 278 F.2d 142 (3rd Cir. 1960), Oddie v. Ross Gear & Tool Co., 195 F.Supp. 826 (E.D.Mich.1961) (appeal pending, 6th Cir. No. 14,712), cf. Zdanok v. Glidden Co., 288 F.2d 99 (2d Cir.1961), cert. granted in part, 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961) (Plant removal after contract expiration does not affect earned recall rights of greater duration than contract term.)

In the present case, contrary to plaintiffs' allegation that the agreement will expire on April 16, 1962, the amendment expressly extends the term to April 16, 1963.[1] Had the contract not been so amended, the first question before the court would be whether, as in Zdanok v. Glidden Co., supra, seniority rights survive the expiration of the agreement. If the amendment provided for nothing more than extension of the agreement, the question then would be whether seniority rights (or indeed all contract rights) survive plant relocation in midterm, as in Viking Equipment and Ross Gear & Tool, supra. Neither of these questions requires decision in the instant case.

The first ground urged in defendant's motion to dismiss is that the amendment to the collective bargaining agreement in express language terminates employment rights upon final shutdown of the Wyandotte plant, the consideration for relinquishment of these rights being the payment of a severance allowance based on length of service.

■ A collective bargaining agent unquestionably has the right, in the exercise of "good faith and honesty of purpose", to alter seniority rights by agreement with the employer, even to the disadvantage of some whom it represents. Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1952). Also, Elder v. N. Y. Central R. Co., 152 F.2d 361 (6th Cir.1945), Cortez v. Ford

---

1. This was confirmed by communication with the parties. The extension-of-term-provision of the amendment is as follows:

"Section 17.02 shall be amended to read as follows:

" 'Section 17.02 Except as provided above in the Addendum dated November 1, 1960 and except as provided for below, the conditions of employment and rates of pay (and other features), as fixed and established by this Agreement, shall remain in effect at the above mentioned plant for four (4) years from the effective date of this Agreement, which is 7 A.M. April 13, 1959, and from year to year thereafter, subject, however, to the right of either signer to this Agreement to terminate or modify this Agreement at the expiration of the fourth year, which is April 16, 1963, or at the expiration of any subsequent yearly period by written notice of intention to so terminate or modify this Agreement, given to the other signer hereof at least sixty (60) days prior to the expiration of any such year.' "

Motor Co., 349 Mich. 108, 84 N.W.2d 523 (1957).

Specifically, in a plant removal situation it has been noted that:

"Of course the employee owning the right [to be recalled at the new location], or his authorized union agent, could bargain away the employee's right." Zdanok v. Glidden Co., 288 F.2d 99, 103, quoted with approval in Oddie v. Ross Gear & Tool Co., 195 F.Supp. 826, 828.

Were any transfer rights which plaintiffs may have had bargained away by the amendment to the agreement?

Section 7.22 of the original 1959 agreement states the circumstances under which seniority is terminated:

"An employee's seniority shall be broken if:

"A—He quits voluntarily.

"B—He is discharged for cause.

"C—He has been laid off for twenty-four (24) consecutive months.

"D—He is recalled to work by the Company after a layoff or leave of absence and fails to respond to such recall within five (5) days of receipt of such notice of recall. Employees shall be notified by registered mail, return receipt requested, of such recall. It is the responsibility of each employee, whether working or laid off, to notify the Company of any permanent or temporary change of address.

"E—He is recalled to work after a a layoff and refuses to accept the job his seniority would entitle him to when recalled by the Company."

In the 1960 amendment it was provided that:

"Section 7.22 shall be amended by the addition of a new paragraph to read as follows:

'F—He is terminated under the provisions of the Severance program' ".

Under the severance program seniority is terminated as of the date of final shutdown of the Wyandotte plant, if not sooner. The full article on severance pay is set forth in the margin.[2]

2. "1. A new Article shall be added to the Labor Contract to read:

"ARTICLE XVIII — SEVERANCE PROGRAM

"Section 18.01 A severance program shall be administered and governed by the following provisions:

"A—Employees hired after May 17, 1960 shall not be eligible for a severance allowance.

"B—Employees who quit and employees who are discharged for cause other than the shutdown of the plant shall not be eligible for a severance allowance.

"C—Employees who are not actively employed in the plant after May 17, 1960 shall not be eligible for a severance allowance.

"D—Employees on the seniority list as of the date of the final shutdown of the plant whose employment with Archer-Daniels-Midland Company's Wyandotte Plant is terminated because of such shutdown shall be eligible for severance allowance, and they shall be credited with service only to their last day of actual work. Employees deemed ineligible under the provisions of paragraphs A and C above shall not be deemed eligible under the terms of this paragraph D.

"E—1. When an eligible employee is laid off after May 17, 1960 and before the actual shutdown date for the plant and is not recalled to work, his severance allowance, shall be calculated on the basis of his full years of service only to his last day of actual work, but if he is recalled by the Company and does not return to work he shall not be eligible for severance allowance. This paragraph applies to employees laid off with the prospect that they will be recalled to work. However, an employee with less than ten (10) years of service at time of layoff who is laid off for a period of six (6) months without being recalled may elect to be terminated and will then be paid his severance allowance; an employee with ten (10) or more years of service at time of layoff who is laid off for a period of three (3) months without being recalled may elect to be terminated and will then be paid his severance allowance.

"2. When the Company lays off an eligible employee after May 17, 1960 and

▇ It is plaintiffs' position that final closing of the Wyandotte plant was not intended to extinguish seniority rights but merely to provide the occasion for payment of a severance allowance without prejudice to the rights of employees who might choose to transfer to Peoria.

The agreement, however, does not permit such a construction. The only election which the amendment affords an employee is the right to receive severance pay before final shutdown if he is laid off for a prescribed period or without prospect of recall before shutdown.[3]

The construction plaintiffs are urging cannot be derived from the plain language of the amendment. Moreover, Section 17.01 of the original contract precludes consideration of any parol understanding, the existence of which defendant in any event denies:

> "This Agreement cancels each and all understandings and Agreements, whether written or verbal, had between the parties and constitutes the entire Agreement between the parties. If agreements are made after the signing of the contract, they must be in writing and in duplicate so that a copy may be retained by both the Union and the Company."

▇▇ Thus, while the court accepts as true all well-pleaded allegations of fact for purposes of the motion to dismiss, it is equally bound to accept the agreement which the parties have made and which is incorporated in the complaint. In view of the express provisions of that agreement, I conclude that in contemplation of defendant's relocating its Wyandotte chemical plant the parties amended their contract to provide for termination of seniority and payment of a severance allowance. That the local union had the authority to negotiate such an agreement cannot, without a showing of *mala fides* and exhaustion of internal remedies, be gainsaid. Cortez v. Ford Motor Co., 349 Mich. 108, 84 N.W.2d 523.

The motion to dismiss is granted on the first ground asserted, and accordingly it is unnecessary to consider defendant's other grounds for dismissal.

An appropriate order may be presented for entry.

---

before the actual shutdown date for the plant and when there is no prospect that such employee will be recalled to work before such shutdown, the Company will so advise the employee. The employee may then elect to be terminated and paid his severance allowance or to retain his seniority until terminated by the Company, and his severance allowance shall be calculated on the basis of his full years of service only to his last day of actual work.

"F—No severance allowance will be paid to the estate, heirs, or beneficiaries of any employee who dies before being terminated under the above provisions.

"G—Former employees who are in retirement status at the time the plant is shut down shall continue to receive their monthly pension benefit until April 15, 1962. As of that date the Pension Plan (ARTICLE XVI) shall expire and their monthly pension benefits shall cease and all insurance contributions paid by the Company in their behalf shall be terminated. However, these retired employees shall participate in the Severance Program as follows: At the time their monthly pension benefits cease, the retired employees shall be given a severance allowance calculated on the same basis as that used in the severance program for terminated employees. Their years of service will be based on service only to the last day of actual work by each retiree. If any retiree dies before becoming eligible for such severance allowance, no severance allowance will be paid to his estate, heirs, or beneficiaries.

"H—A full year of service is defined as the period of service between each employee's anniversary dates, and full years of service shall be counted only to the last anniversary of employment which an employee passes before his service record is discontinued as above.

"I—No severance allowance will be paid for fractions of full years of service.

"J—Severance allowances granted under the above rules shall be calculated on the basis of one hundred dollars ($100) for each full year of service."

3. "Addendum," Section 18.01(E) (1 and 2), supra note 2.