Olga ZDANOK, John Zacharczyk, Mary A. Hackett, Quitman Williams and Marcelle Kreischer, Plaintiffs-Appellants,

v.

GLIDDEN COMPANY, Durkee Famous Foods Division, a Foreign Corporation, Defendant-Appellee.

No. 217, Docket 26542.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1961.

Decided March 28, 1961.

Petition for Rehearing and Rehearing In Banc Denied April 24, 1961.

Lumbard, Chief Judge, dissented.

■■■■■■■■■■■■■■■■■

Morris Shapiro, New York City (Harry Katz, Sahn, Shapiro & Epstein, New York City, on the brief), for plaintiffs-appellants.

Chester Bordeau, New York City (Charles C. Humpstone, White & Case, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, MADDEN, Judge, United States Court of Claims,* and WATERMAN, Circuit Judge.

MADDEN, Judge.

The plaintiffs sued in the District Court for the Southern District of New York for damages for alleged breach by the defendant of a contract made for their benefit by a labor union. The District Court had jurisdiction because of diversity of citizenship. The Court decided that they were not entitled to recover, 185 F.Supp. 441, and they have appealed.

From 1929 until November 30, 1957, the defendant operated a plant at Elmhurst, New York, known as its Durkee Famous Foods Division. The plaintiffs are members of General Warehousemen's Union, Local 852, which is affiliated with the Teamsters' Union. The defendant and Local 852 had had collective bargaining agreements since December 1, 1949, each agreement covering a two-year period. The last agreement covered the period December 1, 1955 to November 30, 1957.

Each agreement contained a provision establishing a system of seniority which required that in case of a curtailment of production, employees were to be laid off in the reverse order of seniority. If, at the time he was laid off, an employee had had five or more years of continuous employment, his seniority would entitle him to be reemployed if an opening for reemployment for one having his seniority occurred within three years after his lay-off. If he had had less than five years of employment before his lay-off, he would be entitled to reemployment if an opening for one with his seniority occurred within two years after his lay-off. The contract between the union and the employer contained a non-contributory pension plan, with normal retirement on pension at age 65, early retirement at 55 if the employee had had 15 years of service, and other types of pensions under specified conditions. The contract also included hospital, medical and surgical insurance, life insurance and accidental death insurance to be paid for by the employer.

On September 16, 1957, the defendant gave written notice to the union that it would terminate the collective bargaining contract at its expiration date, November 30, 1957. After September 16 it began to reduce production at Elmhurst, and to remove its machinery and equipment from Elmhurst to a newly established plant at Bethlehem, Pennsylvania. The employment of four of the five plaintiffs was terminated on November 1, and that of the fifth one on November 18. The ages of the five plaintiffs, at the time of their discharge, ranged from 43 to 61 years, and their periods of employment with the defendant ranged from 10 to 25 years.

The defendant removed a considerable part of its machinery from its Elmhurst plant to the new Bethlehem plant, and manufactured there a number of the same products. The Bethlehem plant was more modern and efficient, and apparently had a considerable number of new machines, in addition to the ones moved from Elmhurst. Some of the products formerly made at Elmhurst were, after the closing of that plant, made at the defendant's Louisville plant.

There was work at the Bethlehem plant similar to that done at Elmhurst by three of the plaintiffs. As to the other two plaintiffs, who were men, aged 43 and 49,

---

* Sitting by designation.

their work at Elmhurst was to check merchandise that was loaded or unloaded from trucks leaving or entering that plant. At the Bethlehem plant such duties have been incorporated into other job classifications which specify the employee to load and unload the trucks and to operate an electric walking type lift truck to stack the merchandise in the storage area as well as to check the incoming and outgoing merchandise that the employee loads and unloads. This different Bethlehem work would not seem to have required any skill that could not have been acquired in a short time.

The defendant offered to give fair consideration to applications for employment at its Bethlehem plant, to its former employees at Elmhurst, only if they would come to Bethlehem and make application there on the same basis as new applicants who might seek employment there. Two Elmhurst employees, not plaintiffs herein, made such applications, and their applications were accepted. Only one of them actually went to work. He has been considered as a new employee at Bethlehem, with no seniority carried over from Elmhurst.

The plaintiffs contend that they were, as beneficiaries of the contract between their union and the defendant, entitled to the jobs which were created by the opening of the plant at Bethlehem. They say that they were laid off because of the removal of the machinery and the cessation of operations at Elmhurst, and that as work was opened up at Bethlehem they were entitled, by reason of their seniority and the contract provisions relating to it, to go to work at Bethlehem with the seniority which they had acquired at Elmhurst.

The defendant offers several defenses. We consider first the defense of *res judicata*. That defense was considered and rejected, first by Judge Dimock, on a motion by the defendant for summary judgment and again, after the defendant had filed its answer asserting *res judicata* as an affirmative defense, by Judge Pal-

mieri, in his decision and opinion on the merits of the case.

Local 852, the plaintiffs' union, served on the defendant a notice of intention to arbitrate certain designated disputes, pursuant to the arbitration provision in the union's contract with the defendant. The defendant made a motion in the Supreme Court of New York to stay arbitration, on the ground that the disputes were not arbitrable under the arbitration provision of the contract. That provision said:

"Any question, grievance or dispute arising out of and involving the interpretation and application *of the specific terms* of this Agreement * * * shall, at the request of either party, be referred to the New York State Mediation Board for arbitration." (Emphasis supplied.)

The court granted the defendant's motion, on the ground that the subjects sought to be arbitrated were not covered by *the specific terms* of the contract. The court's opinion [1] lays much emphasis on the word *specific* in the agreement to arbitrate and says that "no one is under a duty to resort to arbitration unless by clear language he has so agreed." The court concluded its opinion with this sentence:

"It follows from all the foregoing that Glidden's motion to stay arbitration must be granted, whatever other remedies the Union may have with respect to the alleged disputes."

The New York court's opinion as a whole, and its concluding paragraph seem to us to show that the court was deciding nothing more than that the arbitration provision, as narrowly written, did not confer jurisdiction upon an arbitration tribunal to adjudicate the disputes in question. If the court had decided, as the defendant claims, that the contract as a whole, in its circumstances, and including its fair implications, conferred no rights upon the union or the employees with regard to the asserted disputes, the

---

1. Matter of General Warehousemen's Union, 1958, 10 Misc.2d 700, 172 N.Y.S.2d 678.

court's concluding paragraph defies understanding.

The defendant also contends that because the collective bargaining agreement contained provisions for the arbitration of disputes, the plaintiffs are not entitled to individually enforce their rights under the agreement. The defendant relies heavily upon Parker v. Borock, 1959, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297, as support for its contention that the plaintiffs individually are not entitled to enforce the rights which they claim here. In the Parker case, the plaintiff had been discharged "for cause." He invoked the grievance procedure of the collective bargaining agreement between his union and employer. He was not reinstated, and the union refused his request to seek arbitration. He thereupon moved in the United States District Court to compel the employer to arbitrate his discharge. The motion was denied.

The plaintiff then sued in the New York state courts for money damages for breach of the collective agreement, asserting that the employer did not have "cause" to discharge him. The defendant moved for a stay pending arbitration, but its motion was denied on the ground that only the employer or the union, and not an employee, could seek a submission to arbitration. The defendant then moved for summary judgment. The New York Supreme Court denied the motion, but the Appellate Division's reversal, granting the motion, was affirmed by the Court of Appeals.

The Court of Appeals said, 5 N.Y.2d at page 160, 182 N.Y.S.2d at page 580, 156 N.E.2d at page 299, that "the employee is the direct beneficiary" of provisions in a collective agreement prohibiting discharge of an employee except for cause. The court held, however, that the plaintiff, who was also "bound by and limited to the provisions of the agreement," had "entrusted his rights to his union representative," who alone could have sought arbitration of the plaintiff's discharge. 5 N.Y.2d at page 161, 182 N.Y.S.2d at page 580, 156 N.E.2d at pages 299–300. The court noted that the plaintiff's only remedy would be against the union for failing to fulfil its duties under the agreement.

The Parker case is, therefore, significantly different from the instant case. In Parker, the question which the plaintiff sought to litigate had been entrusted by him, under the collective agreement, to the arbitration process. That was the interpretation which the New York Court of Appeals placed upon the contract there before it. In the instant case, as we have seen, the Supreme Court of New York has held that the dispute with which this suit is concerned is *not* covered by the arbitration provision of the agreement.[2] The plaintiffs have not, therefore, entrusted to their union representative the rights which they now seek to enforce.

As to the merits of the plaintiffs' claims, the defendant takes the bold position that the collective bargaining contract conferred upon the employees no rights which survived the contract. It says, at page 27 of its memorandum:

> "Even if the Elmhurst operations had continued but the collective bargaining agreement had expired, the seniority status of plaintiffs would not have survived the termination of that agreement. For it is only by reason of existing provisions in the agreement that provisions relating to the seniority have any application. When such provisions no longer exist, seniority no longer exists."

The defendant may have assumed this bold and uncompromising position because it feels uneasy about Judge Palmieri's having based his decision solely upon the geographical shift of the plaintiff's factory operations. We discuss that problem later herein.

We think the defendant's language, quoted above, is not supportable. Suppose an employee had completed five years of service in October, 1957. Under the seniority provision of the collective bargaining agreement, he thinks that he has

---

2. Matter of General Warehousemen's Union, supra.

earned, and acquired, by continuous service, valuable insurance against unemployment; that by reason of having worked continuously for this company longer than many of his fellow workmen, he could not be laid off unless the lay-off cut deep into the working force; that even if he should be reached in a lay-off, he would be sure to be reemployed if at any time within three years after the lay-off his name should be reached on the seniority list, for reemployment. As we have seen, the defendant's position is that the employee had not acquired any such rights.

■ Rights embodied in a collective bargaining contract negotiated by a union "inure to the direct benefit of employees and may be the subject of a cause of action." Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S.2d 577, 156 N.E.2d 297–298, citing Barth v. Addie Co., 271 N.Y. 31, 2 N.E.2d 34, and other New York cases. If one has in October a right to demand performance of the corresponding obligation at any relevant time within a period of three years, it would be strange if the other contracting party could unilaterally terminate the right at the end of three weeks. Of course the employee owning the right, or his authorized union agent, could bargain away the employee's right. Nothing of that kind occurred in the instant case.

At the time the Elmhurst employees were discharged, those who had reached the age of 65 and had otherwise satisfied the conditions prescribed in the collective bargaining agreement for receiving retired pay, were placed on the defendant's retired list and have been and are currently receiving their retired pay. Similarly, those who had reached the age of 55, or who had become permanently disabled in the service of the defendant, and had had 15 years of employment with the defendant, are receiving their retired pay. Those who had 15 years of service and had reached the age of 45 at the time of their discharge were advised by the defendant that they had vested rights to retirement benefits and would begin to receive payments when they reached the age of 65.

■ These rights to retired pay, though their realization will extend far into the future, and though they arise solely and only out of the terms of the union agreement with the defendant, have been treated as "vested" rights and are being voluntarily honored by the defendant. This was, we suppose, because the employees had earned these rights by compliance with the terms of the contract, and the fact that the contract was not renewed, and that other workmen in the future might not have the opportunity to earn similar rights, was irrelevant. We think the plaintiff employees had, by the same token, "earned" their valuable unemployment insurance, and that their rights in it were "vested" and could not be unilaterally annulled.

We think, then, that if the plaintiff had continued to operate the Elmhurst plant, without a renewal of the union contract, or had reopened it after it had been closed for a time, the employees would have been entitled to reemployment, with seniority. This brings us to the issue which Judge Palmieri in the District Court, found to be the critical issue, i. e., whether the unit to which the employees' rights attached "extended beyond the Elmhurst plant." [185 F.Supp. 447]. He held that the rights were not enforceable except in the Elmhurst plant, and therefore denied recovery. With deference, we disagree with this conclusion.

The union contract, in its preamble, recited that it was made by the defendant company

"for and on behalf of its plant facilities located at Corona Avenue and 94th Street, Elmhurst, Long Island, New York."

If this narrow geographical description is treated as setting fixed boundaries upon the scope of the contract, difficulties immediately arise. If the plant moved from 94th Street to 93d Street in Elmhurst, an entire structure of valuable legal rights would tumble down. A *fortiori* if the plant moved to a site a few

miles or a good many miles away, the consequence would be the same. But one would be obliged to wonder why so catastrophic a consequence should follow a mere change in physical location. And it would be hard to conjure up a reason why it should. Rather it would seem that the recital in the contract would be analogous to the *descriptio personae* familiar to the law in various situations.

■ A rational construction of the contract would seem to require that the statement of location was nothing more than a reference to the then existing situation, and had none of the vital significance which the defendant would attach to it. Contracts must, in all fairness, be construed *ut res magis valeat quam pereat*. If not, the reasonable expectations of the parties are sacrificed to sheer verbalism.

In the instant case the plant was, of course, not moved from 94th Street to 93d Street in Elmhurst, nor from Elmhurst to another town within commuting distance of the then residences of the employees. It was moved to a city in another state. That fact does not seem to us to be decisive. It would, of course, have confronted the employees with troublesome problems. They would have had to decide whether the advantages of continued employment with this employer, the right to which they had earned in Elmhurst, were sufficient to induce them to make so considerable a move. It is probable that many of them would not have made the move. Those to whom the defendant had offered employment in Bethlehem, who did not accept the offer, would have, in effect, resigned their seniority and the rights that accompanied continued employment

We can see no expense or embarrassment to the defendant which would have resulted from its adopting the more rational, not to say humane, construction of its contract. The plaintiffs were, so far as appears, competent and satisfactory employees. They had long since completed the period of probation prescribed in the union contract. It would

seem that they would have been at least as useful employees as newly hired applicants. The defendant's Bethlehem plant was a new plant. There could not have been an existing union representative or a collective bargaining agreement there, at the time the plant was opened.

In the circumstances, no detriment to the defendant would have resulted from a recognition by the defendant of rights in its employees corresponding with their reasonable expectations. In that situation, a construction of the contract which would disappoint those expectations would be irrational and destructive.

■ It follows from what we have said that the plaintiffs were entitled to be employed at the defendant's Bethlehem plant, with the seniority and reemployment rights which they had acquired at the Elmhurst plant. The refusal of the defendant to recognize that entitlement was a breach of contract, and the plaintiffs are entitled to recover the damages which that breach has caused them.

■ The plaintiffs allege in their complaint that they have been "deprived of employment by the defendant," as a result of the defendant's conduct recited above. That is an adequate allegation that they would have accepted employment at Bethlehem if it had been offered to them on the terms to which they were entitled. Proof of this allegation may well fall short of complete conviction, but the trier of fact will not penalize the plaintiffs on account of the uncertainty which has been caused by the defendant's conduct.

Whatever pension rights would have been earned by employment at Bethlehem, if it had been accepted, must be recognized by the defendant.

Since the case will be remanded, we leave to the District Court consideration of the right of recovery, if any, in connection with the welfare plan and the group insurance plan which were included in the union agreement.

■ It appears that the named plaintiff Mary A. Hackett is deceased, and that

no motion for substitution has been made. Unless a proper motion is made, the District Court will dismiss the complaint as to that plaintiff.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LUMBARD, Chief Judge (dissenting).

For the reasons persuasively set forth in Judge Palmieri's careful and thorough opinion, reported at 185 F.Supp. 441, I would affirm.

It is immaterial to the resolution of the question before us that the employment of competent and satisfactory employees is suddenly terminated, or even that the employer has acted ungenerously, as indeed it has. We are called upon to construe the contract upon which the parties agreed and not to substitute for it one with more humane or less destructive terms.

The parties have assumed here that the Supreme Court's decision in Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, did not *sub silentio* overrule the distinction between "individual" and "union" rights announced in Association of Westinghouse Salaried Employees v. Westinghouse Elec. Co., 1955, 348 U.S. 437, 461, 75 S.Ct. 488, 99 L.Ed. 510. Although the survival of this distinction gives the employees standing personally to assert "individual" rights arising out of a collective-bargaining agreement, Local Lodge 2040 Intern. Ass'n of Machinists A.F.L.–C.I.O. v. Servel, Inc., 7 Cir., 268 F.2d 692, 696, certiorari denied, 1959, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120, the contract should be construed in light of federal substantive law pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185.

The federal cases hold that seniority is not inherent in the employment relationship but arises out of the contract. E. g., Elder v. New York Central R. R., 6 Cir., 1945, 152 F.2d 361, 364; see Note, 54 Nw. U.L.Rev. 646, 649–50 (1959). If rights are to persist beyond the term of the collective-bargaining agreement, the agreement must so provide or be susceptible of such construction. See United Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

The agreement we are here called upon to interpret did not expressly provide for any retention of seniority rights beyond the termination of the collective-bargaining agreement. The employees claim, however, that by agreeing to rehire on the basis of seniority for two or three years after layoff, the employer undertook not only to retain seniority rights after the expiration of the agreement but to extend existing seniority privileges to any other location to which the work then done at Elmhurst would be assigned. Relocation of an employer's plant does not, of course, automatically terminate all rights under a collective-bargaining agreement; whether such rights continue depends on the terms of the contract. See Metal Polishers, Buffers, Platers, and Helpers Intern. Union, Local 44 A.F.L.–C.I.O. v. Viking Equipment Co., 3 Cir., 1960, 278 F.2d 142. The issue here is whether this collective-bargaining agreement gave the employees the right to "follow the work" to the new site. I would hold that it did not.

The closing of the Elmhurst plant and the removal of the defendant's operations to a new location were concededly done in good faith and were not wholly unforeseeable. As Judge Palmieri points out, it is not uncommon for the parties to extend beyond a single plant the area in which seniority rights are to apply. Surely unions are now fully of age and are able to protect themselves and their members at the bargaining table. The consequences of dismissing the plaintiffs' case might indeed be unfortunate and even "catastrophic" from their point of view, but it is hardly "irrational and destructive" for a court to leave the parties as they are if they have never seen fit to provide otherwise.