518

PROCTER & GAMBLE INDEPENDENT
UNION OF PORT IVORY, N. Y.,
Plaintiff,

v.

PROCTER & GAMBLE MANUFACTUR-
ING COMPANY, Defendant.

No. 60-C-1022.

United States District Court
E. D. New York.

Feb. 21, 1962.

Sabino J. Berardino, New York City, by Martin J. Loftus, Newark, N. J., for plaintiff.

Hale, Russell & Stentzel, New York City, for defendant.

MISHLER, District Judge.

## FACTS

Plaintiff (Union) and defendant (Employer) entered into a collective bargaining agreement, dated April 30, 1959, which by its terms was to continue until April 30, 1960, and to be renewed from year-to-year thereafter, unless either party to the agreement gave notice in writing to the other 60 days prior to the expiration date " * * * and a date set to negotiate a new Agreement."[1]

During the contract period and thereafter until the present time, the Union was certified by the National Labor Relations Board as the bargaining agent for the employees involved.

The Union gave more than 60 days notice prior to April 30, 1960, pursuant to Article XXI to negotiate a new contract. Prior to April 30, 1960, after said notice was sent, the parties agreed to extend the terms and conditions of the contract until May 14, 1960. The contract was not further expressly extended.

On June 23, 1960, the parties entered into a new collective bargaining agreement expiring on June 23, 1962. Between the dates of the termination of the April 30, 1959 contract, i. e., May 14, 1960, and the execution of the June 23, 1960 contract, disputes arose which Union claims are subject to the arbitration clause in the expired contract.

1. Article XXI of the agreement states:
"Duration of contract
"This Agreement shall go into effect upon the date hereof and shall continue until April 30, 1960 and shall be automatically renewed from year to year thereafter, unless at least sixty (60) days prior to the expiration of this Agreement, or any of the dates of the renewal thereof, notice in writing shall be given by either party to the other and a date set to negotiate a new Agreement."

## UNION'S CONTENTIONS

█ The Union claims that its failure to give notice to the Federal Mediation Service pursuant to 29 U.S.C.A. § 158(d)(3) extended the termination date of the contract for the 30 day period referred to therein to June 13, 1960. The plain intent is to condition the right to strike on the giving of the 30 day notice to the Federal Mediation Service to any State or Territorial agency. Local Union 219, Retail Clerks Int. Ass'n. v. N. L. R. B., 105 U.S.App.D.C. 232, 265 F.2d 814, 819. The failure to comply with the section cannot be used as a vehicle for extending the contract period.

█ The Union further contends that the right to arbitration is a "vested" right.[2] In Zdanok v. Glidden Co., 2d Cir. (1961) 288 F.2d 99, the Court declared that seniority rights, and pension rights are vested rights and are not forfeited with the expiration of the collective bargaining agreement, but extend beyond the term fixed in the agreement. See however dissenting opinion of Lumbard, Ch. J. at p. 105.[3] In Zdanok v. Glidden, supra, the collective bargaining agreement was made by defendant for its Elmhurst, L. I. plant. After expiration of the contract, the plant moved to Bethlehem, Pa. The dissenting opinion in holding that seniority rights did not survive the contract, said at page 105:

"The issue here is whether this collective-bargaining agreement gave the employees, the right to 'follow the work' to the new site."

In the instant case though the contract expired the relationship of employer-employee continued. During this period of employment, from May 14 to June 23 (the date of execution of a new collective bargaining agreement), all the terms and conditions of the expired agreement were honored except (1) the right to use a union bulletin board and (2) the check-off, or deduction of union dues from employees' pay. During this 5 or 6 week period, negotiations for a collective bargaining agreement continued.

One of the conditions in the relationship during the term of the expired contract was the grievance procedure as set forth in Article XI of the agreement. Though the agreement expired on May 14, 1960, the relationship continued, and the right to arbitration under the grievance procedure continued. The grievance procedure, once established by the collective bargaining agreement, was no longer dependent upon its existence, but only upon the continued relationship of employer-employee. In Food Handlers Local No. 425 v. Arkansas Poultry Coop., W.D.Ark.1961, 199 F.Supp. 895, the Court quoted 31 Am.Jur., Labor § 110 entitled Termination at p. 900, a portion of said section stating:

"An agreement respecting certain terms of an existing collective labor agreement has been held not to amount to a termination thereof if

2. The arbitration provision was part of the grievance procedure established in the contract dated April 30, 1959. It stated in part as follows:
"Article XI Grievance Procedure
"1. The employer desires that unfairness to its employees shall not exist. A grievance is defined to be any difference between the Employer and Union, or employee or employees covered by this Agreement, as to any matter involving the interpretation or application of any provision of this Agreement (or any matter directly affecting the employee in respect to hours of work, wages or conditions of employment). Such grievances shall be adjusted according to the following procedure:"

Thereafter 4 steps in the procedure are described. Step 4 is the appointment of a Board of Arbitration consisting of an arbitrator appointed by each of the parties and a third to be selected by the arbitrators appointed. Upon failure to agree the parties were to select a third arbitrator from a list submitted by the American Arbitration Association.

3. Chief Judge Lumbard stated:
"If rights are to persist beyond the term of the collective-bargaining agreement, the agreement must so provide or be susceptible of such construction. See United Steel Workers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424."

it contains nothing indicating *an intention to abandon the established scheme*, except with relation to a particular subject or part thereof upon which the parties agree." [4] (italics supplied)

The importance of the grievance machinery is emphasized in the language of the Supreme Court in United Steelworkers of America v. Warrier & Gulf Nav. Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, as follows:

"* * * the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system or private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the party. * * *

"* * * The grievance procedure is, in other words, a part of the continuous collective bargaining process."

I find that all the matters which the Employer claims are issues of fact, are arbitrable. Procter & Gamble Ind. Union v. The Procter & Gamble Mfg. Co., 2d Cir. 1962, 298 F.2d 647. The Supreme Court stated in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, the following:

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there

is equity in a particular claim, or determining whether there is particular language in a written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

Motion granted. Settle order on two days notice.

4. Food Handlers Local No. 425 v. Arkansas Poultry Coop., Inc., supra, came to a different conclusion, citing Paterson Parchment Paper Co. v. International Brotherhood of Papermakers, 191 F.2d 252 (3 Cir. 1951), cert. den. 342 U.S. 933, 72 S.Ct. 376, 96 L.Ed. 694, rehearing den. 342 U.S. 956, 72 S.Ct. 625, 96 L.Ed. 710. In that case however the relationship of employer-employee had ceased and the obligation not to strike ceased with it. The Court interpreted a clause of the expired contract that provided that "* * * should there be a delay in negotiating a new agreement this agreement shall remain in full force and effect until such time as a new agreement is completed." On page 254, of 191 F.2d, the Court said: "* * * in accordance with the contract, termination was suspended by negotiations toward a new contract. These failed and ended. The old contract thereupon terminated * * *. The obligation not to strike, like the other obligations of the contract ceased to exist."