405 F.2d 29
 LOCAL 1251 INTERNATIONAL UNION OF UNITED AUTOMOBILE,
AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA UAW,
Lillian Perugiani, Zephire Lavergne, Pauline Jones, Nunzio
Pastore, Jr., Vita Moher, on behalf of themselves and on
behalf of other employees similarly situated, Plaintiffs-Appellants,
v.
ROBERTSHAW CONTROLS COMPANY, Defendant-Appellee.
 No. 449, Docket 31955.
 United States Court of Appeals Second Circuit.
 Argued April 25, 1968, Submitted to the En Banc Court June 4, 1968.
Decided June 24, 1968.
 
 John A. Arcudi, Bridgeport, Conn., for appellants.
 Francis V. Lowden, Jr., Richmond, Va. (Hunton, Williams, Gay, Powell & Gibson and Paul M. Thompson, Richmond, Va., and Buckley, Hilgendorff, Williams & Smith and Philip Hawley Smith, Bridgeport, Conn., on the brief), for appellee.
 Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.
 
 
 1
 HAYS, Circuit Judge (with whom LUMBARD, Chief Judge, MOORE, FRIENDLY, SMITH, KAUFMAN, ANDERSON and FEINBERG, Circuit Judges, concur):
 
 
 2
 This is an action brought by a union and certain of its members on behalf of themselves and others similarly situated to recover damages for breach of a collective bargaining agreement between the union and Lux Clock Manufacturing Company, Inc. The individual plaintiffs, who were employed in Lux's Waterbury, Connecticut plants, were laid off when Lux transferred two departments to its Lebanon, Tennessee plant. They contend that, under the seniority provisions of the 1960 collective bargaining agreement then in force, they were entitled to recall to available jobs at the Lebanon plant.
 
 
 3
 The defendant, Robertshaw Controls Company, which acquired all of the assets of Lux in 1961, moved for summary judgment in the district court below partly on the ground that the collective agreement did not give the Waterbury employees any rights at the Lebanon plant. The district court granted the motion on that ground. We affirm.
 
 
 4
 Lux was a clock manufacturer with plants located in Waterbury and Lebanon, and in Oakville, Ontario. Beginning in 1953 Lux from time to time for economic reasons transferred some of its operations from the Waterbury plants to its plants in Lebanon and Oakville. These transfers resulted in the layoff of a number of workers employed in the Waterbury plants. The transfer involved in this case was the most substantial, requiring the layoff of more than two hundred employees.
 
 
 5
 The plaintiff union was certified as the bargaining representative of the employees at the Waterbury plants in December, 1955. In May, 1956 the union and Lux concluded the first of a series of successive collective bargaining agreements. It is the 1960 agreement on which plaintiffs rely in the present case.[1]
 
 
 6
 Concededly there is no language in the relevant provisions of the 1960 agreement, set forth in the margin,[2] which expressly grants to employees of the Waterbury plants seniority rights at plants located outside of Waterbury. Nor does the bargaining history suggest that any of these provisions should be read to include such rights. Despite the pattern of periodic transfers of operations from Waterbury, at no time prior to the negotiations for the 1960 contract did the union request that employees be given severance pay or priority rights at the other plants. A proposal for severance pay was made during the 1960 contract negotiations, but was rejected by Lux.
 
 
 7
 In the last analysis, plaintiffs' claim rests entirely on the decision of this court in Zdanok v. Glidden Co., 288 F.2d 99, 90 A.L.R.2d 965 (2d Cir.), cert. denied on this issue, 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961).[3] The Glidden Company decided to close its plant in Elmhurst, New York and to move its equipment to a new and modern plant in Bethlehem, Pennsylvania. Certain employees at the Elmhurst plant who were laid off as a result of this move brought suit, alleging that the company had breached a collective bargaining agreement by failing to recall them with seniority to available jobs at the Bethlehem plant. The district court construed the seniority provisions, which were similar to those in the present case, as applying only to seniority at the Elmhurst plant and found for the defendant. On appeal, this court reversed, Chief Judge Lumbard dissenting.
 
 
 8
 The majority opinion held that seniority rights survived beyond the term of collective agreement, which had expired shortly after the plaintiffs were laid off. The court then turned to the question whether these rights also survived the change in plant location. The agreement recited that it was made by the defendant 'for and on behalf of its plant facilities located at Corona Avenue and 94th Street, Elmhurst, Long Island, New York' but the court refused to give this language controlling significance. Zdanok v. Glidden Co., supra, 288 F.2d at 103. The court said that the burden to defendant of offering employment with seniority to Elmhurst workers at Bethlehem was not great. The court found that 'the reasonable expectations of the parties' would be fulfilled by construing the contract to accord the Elmhurst employees seniority rights at the Bethelehem plant. Id. at 104.
 
 
 9
 The decision provoked considerable law review comment, most of it adverse. See, e.g., Aaron, Reflections on the Legal Nature and Enforceability of Seniority Rights, 75 Harv.L.Rev. 1532 (1962); Lowden, Survival of Seniority Rights Under Collective Agreements: Zdanok v. Glidden Co., 48 Va.L.Rev. 291 (1962) (author is attorney for appellee in the present case); Turner, Plant Removals and Related Problems, 13 Lab.L.J. 907 (1962); Note, Labor Law Problems in Plant Relocation, 77 Harv.L.Rev. 1100, 1117-21 (1964); Note, Industrial Mobility and Survival of Seniority-- What Price Security?, 36 S.Cal.L.Rev. 269 (1963); 61 Colum.L.Rev. 1363 (1961); 40 Texas L.Rev. 721 (1962). But see, e.g., Blumrosen, Seniority Rights and Industrial Change: Zdanok v. Glidden Co., 47 Minn.L.Rev. 505 (1963); 110 U.P.a.L.Rev. 458 (1962). See also Panel Discussion, Plant Removals and Related Problems, 13 LablL.J. 914-22 (1962); Seminar, Plant Removals and Subcontracting of Work, 14 Lab.L.J. 366-79 (1963); articles cited in Zdanok v. Glidden Co., 327 F.2d 944, 952 n. 11 (2d Cir.), cert denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).
 
 
 10
 Labor arbitrators have refused to follow the Glidden decision. See Empire Textile Corp., 44 Lab.Arb. 979, 934-85 (Scheiber, 1965) ('Glidden, whose effective life was short, has proven to be, under sound law, an unsafe guide and a dim beacon'); Paragon Bridge & Steel Co., 44 Lab.Arb. 361, 369 (Casselman, 1965) ('No courts or authorities in the filed have been found who attribute any remaining vitality to (the Glidden case)'); Sivyer Steel Casting Co., 39 Lab.Arb. 449, 454-55 (Howlett, 1962); United Packers, Inc., 38 Lab.Arb. 619 (Kelliher, 1962). See also International Shoe Co. v. International Ass'n of Machinists, 66-2 CCH Lab.Arb. Awards P8621 (McCoy, 1966); March Wall Products v. Carpenters Local 2288, 65-2 CCH Lab.Arb. Awards P8774 (Kagel, 1965); H. H. Robertson Co., 37 Lab.Arb. 928, 932 (Duff, 1962).
 
 
 11
 In Oddie v. Ross Gear and Tool Co., 305 F.2d 143 (6th Cir.), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962), the Court of Appeals for the Sixth Circuit was required to decide the right of employees under seniority provisions of a collective agreement to 'follow their work' from Ross' Detroit plant when a part of the operations there were transferred to a new plant at Lebanon, Tennessee. TheCourt held that the clause in the agreement in which Ross recognized the union as the exclusive representative 'of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit * * *' placed geographical limitations on the employees' seniority rights. Although it sought to distinguish Glidden, the court's opinion in Oddie is clearly at odds with the spirit of the Glidden decision.
 
 
 12
 Subsequent cases have found the reasoning of Oddie more persuasive than that of Glidden. See Neal v. Reliance Electric & Engineering Co., 12 Ohio App.2d 183, 231 N.E.2d 882 (1967); Woody v. Sterling Aluminum Products, Inc., 243 F.Supp. 755, 776 (E.D.Mo. 1965), aff'd, 365 F.2d 448 (8th Cir. 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967); Slenczka v. Hoover Ball and Bearing Co., 215 F.Supp. 761 (N.D.Ohio 1963). But see Thompson Brotherhood of Sleeping Car Porters, 243 F.Supp. 261, 268-270 (E.D.So.Car.1965), aff'd, 367 F.2d 489 (4th Cir. 1966), cert. denied, 386 U.S. 960, 87 S.Ct. 1019, 18 L.Ed.2d 110 (1967) (dictum).
 
 
 13
 Indeed, apart from failing to generate acceptance elsewhere, Glidden has lost much of its authority in this circuit. We said in Procter and Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181, 186 (2d Cir. 1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963), that 'Zdanok cannot properly be read to govern situations which are not strictly within the facts there presented. More particularly the case cannot be made to stand in any general way for the survival of contractual obligations during any period beyond the period for which they were expressly undertaken.' The authority of Glidden was further eroded in a second appeal in the case, Zdanok v. Glidden Co., 327 F.2d 944 (2d Cir.), cert. denied 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 293 (1964). The court there held that because of the law of the case doctrine evidence of bargaining history (which, the district court had noted, revealed that the parties did not have the expectations attributed to them by the Court of Appeals on the first appeal), could not properly be introduced on the remand following the first appeal. After characterizing the action of the court in Oddie in distinguishing Glidden as polite and noting that the two cases were not fairly distinguishable, Judge Friendly said:
 
 
 14
 'What the Oddie ruling does create, particularly when it is superimposed on Chief Judge Lumbard's earlier dissent here and the great amount of critical discussion in the law reviews that our decision has engendered, is doubt whether, if other similar contracts should come before us for construction, we ought follow the lead of our divided decision in this case or of the unanimous contrary one of the Sixth Circuit in Oddie.' 327 F.2d at 952.
 
 
 15
 We are persuaded that the reasoning of the majority opinion in the Glidden case was erroneous and that that erroneous reasoning led to an incorrect result. For example, the basic proposition of the opinion, that seniority is a vested right, finds no support in authority, in logic or in the socio-economic setting of labor-management relations. Seniority is wholly a creation of the collective agreement and does not exist apart from that agreement. The incidents of seniority can be freely altered or amended by modification of the collective agreement. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). In giving seniority a conceptual status apart from the provisions of the collective agreement and the intentions of the parties the Glidden opinion seriously misconceived the nature of the employment relationship and dealt 'a blow to labor-management relations.'[4]
 
 
 16
 The Glidden opinion stated that the court was 'adopting the more rational, not to say humane, construction' of the agreement and that another construction 'would be irrational and destructive.' 288 F.2d at 104. However, as Chief Judge Lumbard said in his dissent in Glidden:
 
 
 17
 'We are called upon to construe the contract upon which the parties agreed and not to substitute for it one with more humane or less destructive terms.' 288 F.2d at 105.
 
 
 18
 Those few who have applauded the decision have not attempted to justify it in terms of contract analysis. Rather they have sought to defend the result upon the basis of equitable considerations or of national labor policy. The sources of these policies and equities are obscure and there is the gravest doubt of the power of the federal courts to apply them in derogation of the contract of the parties.
 
 
 19
 In Chief Judge Lumbard's words (288 F.2d at p. 105, dissenting opinion):
 
 
 20
 k07'If rights are to persist beyond the term of the collective-bargaining agreement, the agreement must so provide or be susceptible of such construction.'
 
 
 21
 It is time that Glidden be formally interred. It is therefore expressly overruled.
 
 
 22
 Affirmed.
 
 WATERMAN, Circuit Judge (concurring):
 
 23
 Though I was of the majority in Zdanok v. Glidden Co., I concur in the overruling of that case. The result reached there has received notoriously scant acceptance. Therefore, not formally to overrule the case when a decent opportunity presents itself ot do so would render a disservide to jurisprudence. To be sure, as pointed out by Judge Hays, the present case is easily distinguishable on its operative facts from the operative facts in Zdanok v. Glidden Co., and could have been easily decided without disturbing the precedential value of the older case within the limited area where the precedent could remain applicable. Here only two departments were transferred to Tennessee; there the Glidden Company completely closed its Elmhurst plant. Nevertheless, I am happy to join in the destruction of that precedent.
 
 
 
 [1]
 The provisions of the 1960 agreement pertinent to this appeal are, with the exception mentioned in the following paragraph, practically identical with the corresponding provisions in the agreements executed in the period between 1956 and 1960
 The 1960 contract included a change in the seniority provisions first made in 1957. The rights were expanded to give employees with less than five years of seniority recall rights after layoff of up to one year and employees with five or more years of seniority recall rights of up to two years.
 
 
 [2]
 ARTICLE I
 Articles of Agreemtnt
 This agreement is made and entered into on this 10th day of August, 1960 by and between the Lux Clock Mfg. Co., Inc., hereinafter referred to as the Company, and the International Union, United Automobile, Aircraft, and Agricultural Implement Workers of America (UAW) for and on behalf of its unit of the Waterbury Brass Workers Union Local 1251, hereinafter referred to as the Union, acting as the sole and exclusive bargaining agency of the employees in the Unit hereinafter defined.
 ARTICLE III
 Recognition
 Section 1.
 The Company recognizes the Union as the exclusive representative of all production and maintenance employees, including Stock Clerks, of the Company in its Waterbury Plants for the purpose of collective bargaining in respect to wages, hours, and other conditions of employment.
 ARTICLE V
 Management
 Section 1.
 Except as otherwise specifically provided in this Agreement, nothing herein contained shall be construed as limiting or restricting the right of the Company to manage and direct the working force, including the right to hire, promote, suspend discharge or discipline for proper cause, or to transfer employees to other duties, to maintain discipline and efficiency, to release employees from duty because of lack of work or other legitimate reasons, to determine products to be manufactured, to extend, limit or curtail its operations when in its sole discretion it may deem it advisable to do so, to decide the extent and location of its operations, the machine and tool equipment, methods of manufacture, schedules of production, process of manufacturing or assembling; all designing, engineering, and control of raw materials, work in process, and finished parts which may be incorporated into the products manufactured.
 ARTICLE VI
 Seniority
 Section 1.
 Seniority is the relative status of employees with respect to continuous Company service unbroken by discharge, voluntary termination, or lay-off exceeding one year in the case of employees with less than five years seniority and two years in the case of employees with five or more years seniority. The periods spent in Armed Forces that are protected by law, and the period during which a person is necessarily absent because of a compensable injury as finally approved in accordance with the provisions of the Connecticut Workmen's Compensation Act will not be deducted. Also, in computing length of service for the purpose of seniority, time lost for the following reasons shall be considered as time served;
 Illness leave up to 12 months and all leaves of absence on Union business. Seniority shall not continue to accrue during leaves of absence for personal reasons exceeding thirty (30) days. It is understood and agreed that the Company's seniority records are accepted on the basis of Company policies that existed prior to this Agreement.
 Section 10.
 Employees laid off will be placed on a recall list in the order of their Company continuous service. When jobs are available in a department from which regular employees have been permanently laid off, or in a department having similar jobs, regular employees on the recall list will be recalled in inverse order of layoff provided they have the ability to perform the jobs available * * *.
 
 
 [3]
 Certiorari was granted on the Limited issue of the participation of a judge of the Court of Claims, and the judgment was affirmed on that issue. 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962)
 
 
 [4]
 Lowden, supra p. 298