508 F.2d 1309
 88 L.R.R.M. (BNA) 2213, 75 Lab.Cas. P 10,571
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, U.A.W.,
and its Local #125, Appellees,
v.
INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION,
THERMOTECH DIVISION, a Delaware Corporation, and
Rainbow Plastics Products, Inc., a
Minnesota Corporation, Appellants.
 No. 74-1316.
 United States Court of Appeals, Eighth Circuit.
 Submitted Oct. 16, 1974.
Decided Jan, 8, 1975.
 
 John C. Zwakman, Minneapolis, Minn., for appellants.
 Robert J. Tennessen, Minneapolis, Minn., for appellees.
 Before HEANEY, BRIGHT and ROSS, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 The United Auto Workers (Union)[1] initiated this action against International Telephone and Telegraph Corporation (ITT or Company)[2] to compel arbitration of certain grievances between Union-represented employees and the Company.
 
 
 2
 The Company, claiming that no valid collective bargaining agreement now exists between the two parties, argues that it need not arbitrate the employees' grievances. The district court rejected the Company's contentions and ordered the entire matter to arbitration, including the threshold issue of the existence of the bargaining agreement.[3] The Comapny appeals from this ruling.
 
 
 3
 We examine the factual background. In 1969, the National Labor Relations Board certified the United Auto Workers as the bargaining representative for production and maintenance workers of Rainbow Plastic Products, Inc. (Rainbow), located at Golden Valley, Minnesota. At the time of certification, Rainbow was a wholly-owned subsidiary of Thermotech Industries, Inc. (Thermotech). Thermotech owned another subsidiary, Cosum Corporation (Cosum), also located at Golden Valley, Minnesota. In 1970, ITT acquired Thermotech, including its subsidiaries, and these corporations became ITT's Thermotech Division. The Thermotech subsidiaries in part engaged in the manufacture of plastic products. The Union, although representing Rainbow employees, had not represented the employees at Cosum.
 
 
 4
 The Union and Rainbow entered into a collective bargaining agreement on November 20, 1972, expiring two years later on November 18, 1974. That agreement described the employer as Rainbow Plastic Products, Inc., of Golden Valley, Minnesota. During negotiations for the 1972 agreement, the Company advised the Union that it contemplated closing both the Rainbow and Cosum facilities and transferring their functions to a new plant in Lakeville, Minnesota, some 40 miles away. These plans reached fruition during the following year and the Rainbow and Cosum plants were closed in November 1973, and their operations transferred and consolidated in a new facility at Lakeville.
 
 
 5
 Prior to this shutdown, the Union and the Company had entered into a separate letter agreement, dated January 15, 1973, which stipulated that present Rainbow employees who desired employment at the new facility would receive 'preferential hiring' privileges and, if hired, would be entitled to seniority based on their initial employment with Rainbow. For employees not retained, the Company agreed to grant severance pay benefits. Approximately 40 Union-represented Rainbow employees transferred to the new plant, although 13 voluntarily terminated their employment by December 1, 1973. Thus, at the time of the hearing in the district court, 27 of the 110 workers employed at the Lakeville facility were former Rainbow workers.
 
 
 6
 Soon after the Lakeville facility opened the Union, prusuant to the 1972-1974 bargaining agreement, filed grievances dealing primarily with wages and seniority rights on behalf of several of the 27 former Rainbow workers. Although the bargaining agreement between the Union and Rainbow cantained a specific procedure to resolve grievances, including arbitration,[4] the Company rejected these grievances and refused arbitration. The Union then brought the present action.
 
 
 7
 On this appeal, the Company presents two main contentions. First, it contends that the January 15, 1973, letter, referred to earlier, clearly and unambiguously served to terminate the then-existing collective bargaining agreement; and that even if the district court found the bargaining agreement and the January 15 letter to be unclear on the termination issue, the court erred in deferring the issue of contract termination to the arbitrator. Second, the Company contends that the trial court erred in determining that the bargaining agreement was not specifically limited in application by its geographic terms to the plant at Golden Valley, Minnesota.
 
 I.
 
 8
 We examine the contract termination issue and the dispute between the parties centering on the January 15, 1973, letter from the Company to the Union. The letter, directed by the Company to the Union's principal negotiator, Francis Jeffrey, was signed on behalf of the Company by Eugene M. Booker, President of Thermotech, and by Jeffrey on behalf of the Union. The text reads as follows:
 
 
 9
 The district court decision recognized that a duty to arbitrate between the Company and the Union would not survive a clear and unambiguous termination of the underlying collective bargaining agreement. But the district court found that the intent of the parties was ambiguous on termination and held the question of termination to be for the arbitrator.
 
 
 10
 In its argument, the Company focuses on the concluding paragraph of the January 15 letter in arguing that the parties expressed an intent to terminate or rescind the bargaining agreement. We agree with the district court that the letter agreement is not so unequivocal as to call for a ruling that as a matter of law the parties intended a termination of all rights under the collective bargaining agreement. We confine our discussion to whether the arbitrator or the district court should be called upon to construe the agreements.
 
 
 11
 On the question of who should determine the issue of contract termination, the district court said:
 
 
 12
 In view of the well recognized virtues of arbitration and the unclarity surrounding the purported termination of the instant bargaining agreement, the Court cannot say with assurance that the contract has been terminated as a matter of Federal labor law. Rather, this is a determination best left to the arbiter. * * * Having this decision be made by the arbiter is in furtherance of Federal labor policy favorable to submitting doubtful questions to arbitration.
 
 
 13
 The district court cited no case directly supporting this holding.[5]
 
 
 14
 The governing principles of law on arbitration are well established. National labor policies favor arbitration as a means of settling labor-management disputes and all doubts should be resolved in favor of arbitrability. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). But since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute that he has not agreed to have arbitrated. Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 582, 80 S.Ct. 1347.
 
 
 15
 It is also clear that whether an employer is bound to arbitrate is normally a threshold matter to be determined by a court on the basis of the contract entered into by the parties. Operating Engineers Local 150 v. Flair Builders, Inc., 406 U.S. 487, 491-492, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); John Wiley & Sons v. Livingston, 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). The district court found, however, that the issues of contract expiration or termination should be judicially resolved only in those cases 'characterized by indisputable evidence' of expiration or termination; and where there is ambiguous language relating to an alleged termination, the threshold issue of contract expiration or termination should be submitted to arbitration. We disagree.
 
 
 16
 When a claim has been made that the collective bargaining agreement, which contains an arbitration clause, has terminated or expired, the courts of appeals have generally held these claims to be for judicial resolution regardless of whether the language in question can be characterized as ambiguous or unambiguous.
 
 
 17
 For example, in the following cases, the facts indicate a genuine ambiguity in the language involved, yet the courts in each case ruled that the issue of contract expiration or termination should be resolved judicially. Oil, Chemical & Atomic Workers Local 7-210 v. American Maize Products Co., 492 F.2d 409 (7th Cir.), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); International Ladies' Garment Workers' Union v. Ashland Industries, 488 F.2d 641 (5th Cir. 1974); United Auto Workers Local No. 998 v. B. & T. Metals Co., 315 F.2d 432 (6th Cir. 1963); United Mine Workers of America, District 22 v. Roncco, 314 F.2d 186 (10th Cir. 1963); Proctor & Gamble Independent Union v. Proctor & Gamble Mfg. Co., 312 F.2d 181 (2d Cir. 1962). The language under consideration in two other cases has been characterized as relatively unambiguous and there the courts have also ordered judicial resolution of the issue of contract expiration or termination. Teamsters Local No. 249 v. Kroger Co., 411 F.2d 1191 (3d Cir. 1969); M.K.& O. Transit Lines, Inc. v. Association of Street, Electric Railway and Motor Coach Employees, 319 F.2d 488 (10th Cir. 1963).
 
 
 18
 An exception to this general rule does exist, however, where the parties have agreed to arbitrate issues of contract termination or expiration. For example, in Electrical Workers Local No. 4 v. Radio Thirteen-Eighty, Inc., 469 F.2d 610 (8th Cir. 1972), the union sought arbitration of a dispute dealing with the dismissal of several employees who belonged to the union. The employer, however, claiming that the bargaining agreement had been terminated, refused to arbitrate. This court ordered the entire matter to arbitration, including the initial claim of the employer that the entire bargaining agreement had terminated. This court premised its ruling on the breadth of the arbitration procedures contained in the bargaining agreement which mandated arbitration 'in the event of a dispute, difference or disagreement * * * concerning the interpretation or application of the terms of this Agreement * * *.' 469 F.2d at 614. We there held that such a broad arbitration clause indicates an intent to arbitrate disputes relating to a purported termination or expiration of the bargaining agreement. See also United Rubber Workers Local 198 v. Interco, Inc., 415 F.2d 1208 (8th Cir. 1969); Winston-Salem Printing Pressmen's Union v. Piedmont Publishing Co., 393 F.2d 221 (4th Cir. 1968). Cf. Prima Paint v. Flood & Conklin, 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).
 
 
 19
 In applying these principles of labor law to the instant case, we hold that the district court erred in submitting the issue of contract termination to the arbitrator. The arbitration clause,[6] although phrased broadly, arises in the context of the grievance procedures and we find no indication in the contract language that the parties ever intended the arbitration clause to apply to the overall issue of contract termination. Moreover, the issue of termination of the bargaining agreement rests on the construction of the January 15, 1973, letter agreement. This letter is a document separate from the bargaining agreement. We find no language in any of the pertinent writings indicating an intention that an arbitrator should interpret the meaning of the January 15 letter. The arbitration clause in the bargaining agreement specifically confines its effect to the 'interpretation or application of the terms of this agreement.'
 
 
 20
 Thus, under the facts of this case, the district court should have resolved the issue of contract termination itself and, accordingly, we reverse and remand on this issue.
 
 II.
 
 21
 The Company further argues that regardless of the outcome of the contract termination issue, because of a claimed geographic limitation in the existing collective bargaining agreement, the agreement applies only to the Rainbow plant in Golden Valley, Minnesota, and not to the new facility at Lakeville, Minnesota. For this proposition, the Company relies on two provisions of the bargaining agreement which specifically refer to Golden Valley, Minnesota. Article II of the agreement, entitled 'Union Recognition,' reads in part:
 
 
 22
 The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, and its Local 125 are recognized by the Company as the sole bargaining agency for all production and maintenance employees employed at Rainbow Plastics Products in Golden Valley, Minnesota * * *(.)
 
 The preamble to the agreement recites:
 
 23
 This agreement made and entered into this 20th day of November, 1972, by and between Rainbow Plastics Products of Golden Valley, Minnesota hereinafter referred to as the Company, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and its Loca 125, UAW, hereinafter referred to as the Union * * *(.)
 
 
 24
 Additionally, the Company notes that the certificate of representation issued by the National Labor Relations Board authorizes the Union to represent 'all production and maintenance employees of the Employer at its Wayzata Boulevard operation in Minneapolis, Minnesota * * *.' The Wayzata Boulevard location designates the Rainbow plant in Golden Valley.
 
 
 25
 The district court rejected the Company's contention, relying on Zdanok v. Glidden Co., 288 F.2d 99 (2d Cir. 1961), aff'd on other grounds, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962). In Zdanok, the employer moved his plant from Elmhurst, New York, to a newly established plant in Bethlehem, Pennsylvania. The employer refused to recognize the seniority provisions of the existing collective bargaining agreement written for plant facilities at Elmhurst, New York, as applicable at Bethlehem. In a divided opinion the Second Circuit held that the employees were entitled to seniority rights at the new plant. The district court in the instant case, in applying the Zdanok precedent, stated:
 
 
 26
 Here, as in Zdanok, designation of the only pertinent plant was done by identifying its address. In both cases there was no other language purporting to restrict the applicability of the contract in the event of a change of geographic location. Because of the union's awareness of the probability of imminent relocation, the most 'rational construction of the contract would seem to require that the statement of location was nothing more than a reference to the then existing situation, and had none of the vital significance which the defendant(s) would attach to it.'
 
 
 27
 The Company urges that we reject this reasoning, principally because Zdanok has been specifically overruled in United Auto Workers Local 1251 v. Robertshaw Controls Co., 405 F.2d 29 (2d Cir. 1968). Robertshaw, as well as Oddie v. Ross Gear and Tool Co., 305 F.2d 143 (6th Cir.), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962), and Wimberly v. Clark Controller Co., 364 F.2d 225 (6th Cir. 1966), has adopted the rule that employees covered by a collective bargaining agreement containing a geographic limitation to the existing plant do not become entitled to seniority rights under such an agreement on relocation or transfer of plant facilities to another state.
 
 
 28
 These precedents, however, do not directly apply to the situation here. First, the plant relocation is not to another state but rather to a location close to the Minneapolis metropolitan area. Second, the record in the instant case discloses that prior to the execution of the collective bargaining agreement of November 20, 1972, the contracting parties had discussed the possibilities of relocation. On this issue the bargaining agreement provides:
 
 
 29
 If, for any reason, it becomes necessary to relocate the Rainbow plant, the Company agrees to negotiate such terms as they may apply to the affected employees. (Article V, Clause 9.)
 
 
 30
 As we have already noted, the parties negotiated an agreement, dated January 15, 1973, covering preferential hiring upon relocation. The issue remains, as discussed earlier, whether that document terminated the collective bargaining agreement or whether the letter agreement and the bargaining agreement together articulate the rights of the Union's former Rainbow workers now at the new Lakeville facility.
 
 
 31
 The Company argues its geographical limitation contention as an issue apart from a determination of whether the January 15th letter terminated the collective bargaining contract. Yet, the crucial overall question is whether the rights of Rainbow's transferred employees now at the Lakeville plant are governed solely by the provisions of the January 15, 1973, document or by the 1972 collective bargaining agreement as modified by the January 15 document.
 
 
 32
 Under these circumstances, the question of the geographic limitation of the collective bargaining agreement is not separable from the overall question of contract termination but, rather, we believe that the two issues are inextricably interwined.
 
 
 33
 Accordingly, on remand, the geographic limitation language in the bargaining agreement should be taken into account as evidence (with other evidence in the record) bearing on the question of whether the collective bargaining agreement has been terminated. If the district court rules affirmatively on that overall question, the action should be dismissed. But if its ruling is in the negative, the court's order for arbitration of the underlying grievances will stand.
 
 
 34
 We remand for proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.
 
 
 35
 ROSS, Circuit Judge (dissenting).
 
 
 36
 I agree with the majority's determination that it was the duty of the district court to decide the issue of contract termination rather than submitting it to the arbitrator. However, in my opinion, it is clear as a matter of law that the bargaining agreement applies only to the plant at Golden Valley, Minnesota and terminated upon the cessation of business by the company at that location.
 
 
 37
 The union contract provides specifically that the union is 'recognized by the Company as the sole bargaining agency for all production and maintenance employees employed at Rainbow Plastics Products in Golden Valley, Minnesota * * *.' The certificate of representation issued by the National Labor Relations Board also contains a geographical limitation to the Golden Valley plant. The only reference in the contract to a possible change in location of the plant is in ARTICLE V dealing with seniority. Section 9 of that article provides that 'if, for any reason, it becomes necessary to relocate the Rainbow plant, the Company agrees to negotiate such terms as they may apply to the affected employees.' Such negotiations did, in fact, take place, resulting in the termination letter agreement dated January 15, 1973.
 
 
 38
 Under these circumstances I would adopt the rule that a collective bargaining agreement which by its terms is limited to one specific geographical location does not apply on relocation or transfer of plant facilities to a completely different location. Oddie v. Ross Gear and Tool Co., 305 F.2d 143, 148-149 (6th Cir.), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962). . see also Local 1251, UAW v. Robertshaw Controls Co., 405 F.2d 29, 31-33 (2d Cir. 1968); Wimberly v. Clark Controller Co., 364 F.2d 225, 228 (6th Cir. 1966); Woody v. Sterling Aluminum Products, Inc., 243 F.Supp. 755, 776 (E.D.Mo.1965), aff'd, 365 F.2d 448 (8th Cir. 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967); Slenczka v. Hoover Ball and Bearing Co., 215 F.Supp. 761, 763-765 (N.D.Ohio 1963). This rule is even more appropriate where, as here, there is a merger of two plants in a third location resulting in the union representing only a small number of employees within a particular bargaining unit.
 
 
 39
 Rather than remanding this case for further proceedings, I would reverse the judgment of the district court with directions to enter judgment for the defendant company. Regardless of the outcome of the contract termination issue, the collective bargaining agreement should not be applicable in the new Lakeville, Minnesota facility.
 
 
 
 [1]
 International Union, United Automobile Aerospace and Agricultural Implement Workers of America and its Local #125
 
 
 [2]
 The named defendants are International Telephone and Telegraph Corporation, Thermotech Division, a Delaware corporation, and a subsidiary, Rainbow Plastics Products, Inc., a Minnesota corporation
 
 
 [3]
 The district court opinion is unpublished. No. 4-73-Civil 550 (D.Minn., Mar. 13, 1974)
 
 
 [4]
 The grievance clause of the bargaining agreement reads in part as follows:
 ARTICLE XII
 GRIEVANCE PROCEDURE
 
 
 [1]
 A complaint pertaining to the interpretation or application of the terms of this agreement shall first be discussed by the employee involved and his immediate supervisor and/or plant superintendent. Unless a grievance is submitted at this step within five (5) days of the alleged violation, the grievance shall be deemed to be without merit for consideration by the parties. If a properly lodged grievance is not resolved within two (2) working days, it may be reduced to writing and referred within an additional working day to: Step 1-- Between the employee, his shop steward, and the plant manager. If it is not satisfactorily resolved within five (5) additional working days, it may be referred to Step 2 with an additional two (2) working days. Step 2-- Between the chief steward, the Union business representative and the designated Company representative. If not satisfactorily resolved at this step within five (5) working days or a mutually agreed upon extension, it may be referred to arbitration, such arbitration should be scheduled within an additional ten (10) working days
 January 15, 1973
 Dear Jeff (Francis Jeffrey):
 Pursuant to our discussion with you and members of the bargaining committee at Rainbow Plastics on January 8, I am summarizing the points we agreed to in that meeting and requesting that your acknowledge the agreement by signing in the space provided below.
 AGREEMENT BETWEEN ITT THERMOTECH DIVISION RAINBOW PLASTICS OPERATIONS AND U.A.W. LOCAL 125
 The complete agreement regarding the closing down of the Rainbow operation and the effects of that move on the unionized employees of that unit is included below:
 
 
 [1]
 For those employees so desiring, preferential hiring will be given to any present Rainbow employee who wishes a job at the new Lakeville facility. In that connection for any employee so hired, he will retain his original date of employment as his seniority date for purposes of determining the extent of his benefits and other such matters
 
 
 [2]
 For those current employees not employed at the Lakeville facility, a severance allowance will be paid equal to the vacation amount they were eligible for on May 1, 1973. In order to be eligible for such a payment, an employee must be working continuously through the 24th of August, 1973. Any employee who terminates or leaves for any reason prior to that date will not be eligible for severance allowance
 
 
 [3]
 The union will provide a list to the company declaring those employees who wish to be hired at the Lakeville facility. Such a list must be submitted to the company no later than July 1, 1973. Any employee whose name does not appear on such list shall not receive consideration for transfer. Any person whose name appears on the transfer list and who does not accept a transfer when offered by the company shall forfeit whatever severance pay he may otherwise have hereunder
 This agreement represents the full and final agreement between the parties and includes all matters discussed regarding the shut down of the Rainbow Plastics operation and the termination of the agreement and the effects of such shut down on the employees included in the bargaining unit represented by Local 125 of the United Auto Workers.
 (s) FRANCIS JEFFREY (s) EUGENE M. BOOKER
 
 
 [5]
 The district court opinion makes reference on a compare basis to Winston-Salem Printing Pressmen's Union v. Piedmont Publishing Co., 393 F.2d 221 (4th Cir. 1968), and Burt Building Material Co. v. Teamsters Local 1205, 18 N.Y.2d 556, 277 N.Y.S.2d 399, 223 N.E.2d 884 (1966). In these two cases the courts ruled that the specific terms of the arbitration clauses were broad enough to encompass a dispute going to the issue of contract termination
 
 
 [6]
 See note 4 supra