PUREX CORPORATION, Plaintiff,

v.

The AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES EMPLOYEES UNION, LOCAL 618, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, an unincorporated voluntary labor organization, and Bob Sleme, Bob Miller, Jack Glass, Dan Heumann, Bill Boyd, Larry McKissic, Terrell Campbell, Bobby Neighbors, John Turner, Walter Smith, Carl Prather, Danny Reid, Charles McDonald, Francis Meeks, Richard Volkmann, Fred Schmoele, Joseph Gray, John Sebelski, Tom Tendick, and Ron Simpson, individually and as representatives of a class, and John Doe, and all others acting in concert with, Defendants.

No. 82–1106C(C).

United States District Court,
E. D. Missouri, E. D.

July 26, 1982.

---

**14.** *Martin v. Merola*, 532 F.2d 191, 198 (2d Cir. 1976) (Lumbard, J., concurring).

**15.** Complaint ¶ 98.

**1012**

D. Michael Liniham, St. Louis, Mo., for plaintiff.

Clyde Craig, St. Louis, Mo., for defendants.

## MEMORANDUM

MEREDITH, District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction. The Court has heard testimony and received exhibits and citations of cases from the parties. The facts are these:

Plaintiff Purex Corporation (hereinafter "the Company") is an "employer" engaged in a business affecting commerce within the meaning of Section 2(2), (6), and (7) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(2), (6) and (7) and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185.

Defendant Union, Local 618, is a "labor organization" representing employees in an industry affecting commerce within the meaning of Section 2(3), (5), (6), and (7) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(3), (5), (6), and (7) and Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185.

Jurisdiction exists in this Court pursuant to Section 301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185.

The Company and the Union, Local 618, entered into a collective bargaining agreement effective July 1, 1979 and continuing until the 30th day of June, 1982.

The agreement contained the following clause:

### Article 2
### DURATION

Section 1.

The term of this agreement shall commence on the first day of July, 1979 and shall continue until the 30th day of June, 1982, and for additional periods of one (1) year thereafter, with the provision that should either party desire to modify or amend any portion or any of the terms

hereof, it shall notify the other party in writing not less than sixty (60) days prior to the 30th day of June, 1982, or at the end of any subsequent yearly period. Section 2.

If such notice is given by either party of its desire to modify or amend any portion of any of the terms hereof, then the party receiving such notice may, not later than fifty (50) days prior to the 30th day of June, 1982, or the end of any subsequent yearly period, notify the other party in writing of its desire to negotiate amendments or modifications thereof. Section 3.

If either party gives such notice of a desire to amend this Agreement, negotiations with regard to an amended Agreement shall start approximately forty (40) days prior to the anniversary date of this Agreement.

If the terms for an amended Agreement have not been agreed to by the anniversary date of this Agreement, then this Agreement shall govern until one of the parties has given the other five (5) days' written notice of termination of this Agreement.

On April 17, 1982, the Local Union 618 gave notice to the plaintiff of its desire and intention to reopen the present agreement with the Local Union on June 30, 1982 in accordance with the terms of the contract. This notice was received by the Company, the plaintiff, on April 19, 1982.

On April 17, 1982, the Union gave notice to the Federal Mediation and Conciliation Service of its intention to terminate or modify the existing collective bargaining agreement. This notice was received by the Federal Mediation Conciliation Service on April 19, 1982.

Negotiations were entered into between the Company and the Union on or about the middle of May, 1982. These negotiations were unsuccessful. Negotiations between the Company and the Union terminated on or about the middle of June, 1982.

On June 24, 1982, a notice was given by the Union to the Company which was received by the Company on June 25, 1982, advising the Company that pursuant to Article 2, Section 3 of the Collective Bargaining Agreement, they were notified that the agreement would terminate five (5) days from the date of the notice.

On July 6, 1982, the Union gave notice to the Company that its members had turned down the Company's final contract proposals on June 27, 1982. The notice, from Richard Burrell, a Union official, stated: "The Union is willing to meet and negotiate, however, as of this date I have not heard from you. So I must assume you are not willing to negotiate and Local 618 will act accordingly."

The Union received the Company's final proposal and rejected it at a meeting on June 27, 1982 and a strike was authorized. The Union met with the Company on July 13, 1982 and the Company would not change its position. The strike began on July 14, 1982. At approximately 12:01 p. m. on July 14, 1982, approximately one hundred employees and members of defendant Local Union walked out of the plant premises at 6901 McKissock and caused a work stoppage and also placed pickets at that plant and the plant locations at 8000 Hall Street, 725 Carrie Avenue, and 6506 North Broadway, St. Louis, Missouri. On July 15, 1982, the Company filed a complaint for an injunction against the Union and its officers and other members. At the same time, the Company requested the Court to issue a temporary restraining order. The Company filed an affidavit with the Court stating that the picketing resulted in 350 employees being without work and stating that the Company was suffering damages in excess of $700,000 per day. The Company was present with the Court through its attorneys. The Union was present with its attorneys and some of its officers. The Court declined to issue a temporary restraining order on July 15, 1982 and orally set the matter for a hearing on a preliminary injunction for July 16, 1982, at 11:00 a. m.

The Company has offered to arbitrate the construction and application of the contract, but only with respect to whether the con-

tract has been terminated. They are not willing to arbitrate the question of wages and benefits.

The contract contains a provision concerning arbitration. Article 8, Arbitration Procedure, reads as follows:

Section 1.

In the event a grievance is submitted to arbitration, the arbitrator may be selected by agreement of the parties or a panel of five (5) names of local members of the National Academy of Arbitrators shall be submitted by the Federal Mediation and Conciliation Service. The Union shall first strike one of the names submitted, the Company strike a second, and each party shall alternatively strike a name until only the name of the fifth person remains who shall be the arbitrator.

The cost of the arbitration, together with all expenses incurred and authorized by the Arbitrator in connection with the arbitration shall be borne equally by both parties.

The Company and the Union shall each pay the cost of their respective representatives, witnesses or parties thereto whether they are employees or not.

The parties shall attempt to agree upon a statement of the issue, but, if they cannot agree, the issue shall be presented as stated in the grievance and the Company's final answer.

Section 2.

The decision of the Arbitrator shall be final and binding upon the parties hereto. The Arbitrator shall only have jurisdiction to decide grievances involving the meaning, interpretation or application of the provisions of this Agreement and shall not have authority or jurisdiction to in any way change, modify, extend or suspend any of the provisions of this Agreement. The Arbitrator shall render his decision in writing thirty (30) days after the conclusion of the hearing and within ten (10) days if the case involves a continuing liability, unless the parties mutually agree otherwise.

Not more than one grievance shall be submitted to an Arbitrator at any one time, unless otherwise agreed by the parties.

Section 3.

It is understood and agreed that the contract interpretation as agreed in negotiations between Local 618 and the Company shall apply and no past practice established when employees were represented by the Chemical Workers Union shall apply except practices that have continued since July 1, 1967.

The dispute between the parties is whether or not the Union shall receive more pay and more fringe benefits. It is the position of the Union that the contract terminated on June 30, 1982 and that they have a right to strike.

It is the position of the Company that the notice given by the Union on June 24, 1982 is insufficient to terminate the contract because the company contends that such notice could only be given after June 30, 1982. The Company further contends that the notice given by the Union on July 6, 1982 is insufficient to terminate the contract for the reason that it does not specify that it intends to terminate the contract. The position of the Company is that the issue of whether the contract has been terminated must be submitted to arbitration.

■ This Court disagrees. The Eighth Circuit has held that the question of arbitrability is ordinarily one for the Court to decide on the basis of the contract entered into by the parties. *Laundry, Dry Clean & D. H. Wrkrs. Int. U., Loc. 93 v. Mahoney*, 491 F.2d 1029 (8th Cir. 1974). When a claim has been made that the collective bargaining agreement which contains an arbitration clause has terminated or expired, such a claim is generally one for judicial resolution. *Int. U., U.A., A. & A.I.W. v. International Telephone and Telegraph*, 508 F.2d 1309, 1313 (8th Cir. 1975).

■ As noted, Article 8, Section 2 of the collective bargaining agreement, which governs arbitration procedure, states: "The Arbitrator shall have jurisdiction to decide

grievances involving the meaning, interpretation or application of the provision of this Agreement and shall not have authority or jurisdiction to in any way change, modify, extend or suspend any of the provisions of this Agreement." It appears to the Court on the basis of the present record that the dispute between the Union and the Company concerning additional wages and benefits does not fall within the arbitrator's jurisdiction insofar as it would necessitate amendments to and changes in the current agreement. The question of contract termination is similarly not arbitrable under Article 8 because it could result in extension of the agreement.

■ Because the issues in dispute in this case are not arbitrable under the collective bargaining agreement, the Court may not enjoin defendant's strike activities. Issuance of a preliminary injunction here would contravene the Norris-LaGuardia Act. *Boys Marketing v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Buffalo Forge Company v. United Steelworkers Union of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976); *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association*, —— U.S. —— at ——, 102 S.Ct. 2673 at 2685, 73 L.Ed.2d 327 (1982).

■ Injunctive relief shall also be denied because it appears to the Court that notice provided by the Union to the Company effectively terminated the collective bargaining agreement. In arriving at this conclusion the Court is guided by the Supreme Court's decision in *NLRB v. Lion Oil Co.*, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957). The contract in that case provided:

This agreement shall remain in full force and effect for the period beginning October 23, 1950, and ending October 23, 1951, and thereafter until canceled in the manner hereinafter in this Article provided.

This agreement may be canceled and terminated by the Company or the Union as of a date subsequent to October 23, 1951, by compliance with the following procedure:

(a) If either party to this agreement desires to amend the terms of this agreement, it shall notify the other party in writing of its desire to that effect, by registered mail. No such notice shall be given prior to August 24, 1951. Within the period of 60 days, immediately following the date of the receipt of said notice by the party to which notice is so delivered, the Company and the Union shall attempt to agree as to the desired amendments to this agreement.

(b) If an agreement with respect to amendment of this agreement has not been reached within the 60-day period mentioned in the sub-section immediately preceding, either party may terminate this agreement thereafter upon not less than sixty days' written notice to the other. Any such notice of termination shall state the date upon which the termination of this agreement shall be effective.

On August 24, 1951, the Union served written notice on the Company of its desire to modify the contract. The Union members voted to strike on February 14, 1952 and the strike began on April 30, 1952. The Union never gave notice to terminate the contract as contemplated by the quoted contractual provisions. The NLRB held that under the contract in dispute, the notice given on August 24th, followed by a wait of more than 60 days satisfied the statute. The Company was ordered to cease and desist and affirmatively to make whole employees found to have been discriminated against. The Court of Appeals set aside the Board's order. 221 F.2d 231. The Court of Appeals held that the expiration date of the contract was the date on which all rights and obligations under it would cease, that the second notice required to bring about this termination not having been given, the strike violated Section 8(d)(4) of the National Labor Relations Act, and that the strikers, therefore, lost their status as employees entitled to the protection of the Act. The Supreme Court held that in that case the notice of the proposed amendment was served 60 days in advance. The strike did

not occur until long afterward and the fact that on October 23rd, the contract became terminable upon further notice by either party was immaterial. The Court further held that "we do not believe that the two phase provision for terminating this contract means that it was not within the contemplation of the parties that economic weapons might be used to support demands for modification before the notice to terminate was given."

In this case there is no question that the Union gave the Company the 60 day notice required under the contract. In addition, it gave the Company a five day notice on June 24, 1982, and another notice on July 6, 1982 before going on strike on July 14, 1982. The Court examined the four corners of the collective bargaining agreement and assessed the history of purpose on the notice provisions therein. *See U.A.W. v. White Motor Company,* 505 F.2d 1193 (8th Cir. 1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975). It believes that the notice provided by the Union substantially complied with the terms of the agreement. 51 C.J.S. *Labor Relations,* § 257 at 1126–1127. Given this, and mindful of the Supreme Court's analysis in *NLRB v. Lion Oil Co., supra,* the Court holds that the agreement was terminated at the time that the strike began.

In *Data Phase Systems, Inc. v. C. L. Systems, Inc.,* 640 F.2d 109 (8th Cir. 1981), the Eighth Circuit held that in determining whether a preliminary injunction should issue, a court should consider four factors. One of these factors is the probability that the movant will succeed on the merits. Because it appears that the dispute in this case is not arbitrable and the contract has been terminated, the Court believes that movant is unlikely to succeed on the merits. Accordingly, preliminary injunctive relief shall be denied.