+ Neighborhood School under Partial K–6 Plan.

+ + Magnet School under Partial K–6 Plan.

**PUREX CORPORATION, Appellant,**

v.

**AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES EMPLOYEES UNION, LOCAL 618, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated voluntary labor organization, and Bob Sleme, Bob Miller, Jack Glass, Dan Heumann, Bill Boyd, Larry McKissic, Terrell Campbell, Bobby Neighbors, John Turner, Walter Smith, Carl Prather, Danny Reid, Charles McDonald, Francis Meeks, Richard Volkmann, Fred Schmoele, Joseph Gray, John Sebelski, Tom Tendick, and Ron Simpson, individually and as representatives of a class, and John Doe, and all others acting in concert with, Appellees.**

No. 82–1892.

United States Court of Appeals, Eighth Circuit.

Submitted March 31, 1983.

Decided April 6, 1983.

Rehearing Denied May 4, 1983.

D. Michael Linihan, Thomas O. McCarthy, St. Louis, Mo., for appellant Purex Corp.; McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., of counsel.

Clyde E. Craig, Nancy M. Watkins, George O. Suggs, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for appellees.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Purex Corporation appeals from the District Court's [1] denial of its motion for an injunction against a strike at its St. Louis plant. According to Purex, the strike violated the no-strike clause in the parties' collective-bargaining agreement. We conclude that the District Court, 543 F.Supp. 1011, correctly determined that the collective-bargaining agreement had expired and therefore we affirm.

I.

Purex and the Automotive, Petroleum and Allied Industrial Employees Union, Local 618 have been parties to a series of collective-bargaining agreements over a number of years. In 1979, the parties entered into a collective-bargaining agreement containing the following duration provisions:

Article 2.

Section 1.

The term of this agreement shall commence on the first day of July, 1979 and shall continue until the 30th day of June, 1982, and for additional periods of one (1) year thereafter, with the provision that should either party desire to modify or amend any portion or any of the terms hereof, it shall notify the other party in writing not less than sixty (60) days prior to the 30th day of June, 1982, or at the end of any subsequent yearly period.

. . . . .

Section 3.

. . . . .

If the terms for an amended Agreement have not been agreed to by the anniversary date of this Agreement then this Agreement shall govern until one of the parties has given the other five (5) days' written notice of termination of this Agreement.

The agreement also contained a mandatory arbitration clause and a corresponding no-strike clause.

On April 17, 1982,[2] well in advance of the required 60 days prior to the contract's termination date, the Union gave Purex notice that it desired to renegotiate the contract. The parties negotiated without success, and on June 24 the Union delivered a letter to Purex which purported to be the five days' notice of termination required by Article 2, Section 3 of the contract. On July 6, the Union sent a letter to Purex rejecting Purex's final contract proposal. The letter went on to say "I [a Union official] must assume you [Purex] are not willing to negotiate and Local 618 will act accordingly." Thereafter, the Union commenced strike activities on July 14.

Purex immediately sought a temporary restraining order and a preliminary injunction against the strike from the District Court. Purex argued that the Union's notice of contract termination was defective, and therefore the contract, including the no-strike clause, remained in effect when the strike began. Under Purex's interpretation of the duration clause, the five-day notice may not be given until after the contract's termination date, and accordingly the Union's June 24th letter was premature. The District Court denied the temporary

---

1. The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri.

2. All subsequent dates refer to 1982, unless otherwise noted.

restraining order on July 15, and, following a hearing on July 16, denied injunctive relief as well. This appeal followed.[3]

## II.

Purex contends that the question of the validity of the Union's five-day termination notice should have been submitted to arbitration. Because of the alleged arbitrability of the issue, Purex claims that the District Court erred in refusing to enjoin the strike and in holding that the collective-bargaining agreement had terminated before the strike began. Purex concludes that the latter decision both invaded the province of the arbitrator and was incorrect on its merits.

### *Appropriateness of Injunction*

In considering whether the Union's strike was subject to injunction, we begin with Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, which generally prohibits federal courts from enjoining strike activities. The Supreme Court established a narrow exception to the anti-injunction rule in *Boys Markets v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), which holds that a strike may be enjoined if it is over a dispute which both parties have agreed to submit to arbitration. The narrowness of the *Boys Markets* exception was emphasized in *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982), and *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). The latter cases hold that a *Boys Markets* injunction may not issue unless the strike has been triggered by an arbitrable dispute.

The Supreme Court's opinions in *Buffalo Forge* and *Jacksonville Bulk Terminals* analyze the *Boys Markets* exception as a means for effectuating the national policy favoring agreements to arbitrate, and not as an enforcement mechanism for no-strike clauses. Both *Buffalo Forge* and *Jacksonville Bulk Terminals* distinguish between strikes where the underlying dispute is arbitrable and those where the legality of the strike itself is arbitrable. Only in the former category are strikes subject to injunction, because only there does the strike represent a breach of the Union's agreement to arbitrate. As the Supreme Court observed in *Jacksonville Bulk Terminals:*

> in agreeing to broad arbitration and no-strike clauses, the parties do not bargain for injunctive relief to restore the status quo pending the arbitrator's decision on the legality of the strike under the collective-bargaining agreement, without regard to what triggered the strike. Instead, they bargain only for specific enforcement of the Union's promise to arbitrate the underlying grievance before resorting to a strike.

—— U.S. at ——, 102 S.Ct. at 2686, 73 L.Ed.2d at 343.[4]

■ In deciding whether an injunction was appropriate in the instant case, the District Court necessarily had to decide whether the underlying dispute was arbitrable. The District Court found that the dispute between the Union and Purex concerned the issue of pay and fringe benefits. Thus the event which triggered the Union's strike was the breakdown in negotiations for a new collective-bargaining agreement with Purex. The terms of a future collective-bargaining agreement are not subject to arbitration under the previous collective-bargaining agreement. Moreover, Purex has specifically declared its unwillingness to arbitrate the question of wages and benefits, even if such a question were arbitrable.

---

**3.** The strike has since ended, and the parties have apparently entered into a new collective-bargaining agreement. Following settlement of the strike, the Union moved to dismiss this appeal for mootness. This Court declined to dismiss the appeal, because in denying injunctive relief, the District Court decided, *inter alia,* that the strike was lawful, thus precluding Purex from seeking damages for breach of contract. Accordingly, the legal effects of the District Court's order have persisted beyond the end of the strike.

**4.** See also *National Rejector Industries v. United Steelworkers,* 562 F.2d 1069, 1075 (8th Cir. 1977) ("It is essential ... that the activity being enjoined represents a *union response to a dispute over a grievance* which the union was contractually bound to arbitrate.").

The question which Purex desires to arbitrate—the construction of the contract's duration clause—will not resolve the underlying labor dispute, but instead will determine the legality of the strike. Because the underlying dispute is not arbitrable, the District Court correctly refused to issue a *Boys Markets* injunction.

### Arbitrability of Termination Clause

Although the District Court could have rested its denial of injunctive relief solely on the finding that the dispute underlying the strike was not arbitrable, the Court also found that Purex failed to satisfy the general criteria necessary for issuance of a preliminary injunction. See *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc). In particular, the Court determined that Purex was unlikely to succeed on the merits because the dispute claimed by Purex to be the central controversy, *i.e.,* construction of the duration clause, was not subject to arbitration. The Court went on to find that the Union had in fact given adequate notice of termination and that therefore the no-strike clause in the terminated contract no longer applied when the strike began.

■ In *International Union, United Automobile Workers v. International Telephone & Telegraph Corp.,* 508 F.2d 1309, 1313–14 (8th Cir.1975), this Court held that issues of contract termination or expiration are for judicial decision, not arbitration, unless the parties have agreed to arbitrate such issues. A broad arbitration clause may give rise to such an agreement, but an arbitration clause limited to employee grievances will not. See also *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290, 1295 (2d Cir.1979) ("[I]f an arbitration clause covers only employee grievances, the court should not compel arbitration of questions of contract termination."). The arbitration clause in the Union's collective-bargaining agreement with Purex immediately follows the clause outlining the employee grievance procedure and begins as follows: "[i]n the event a grievance is submitted to arbitration . . . ." This clause is analogous to those examined in the *International Union, UAW* and *Roch-*

*dale Village* cases, which the courts determined did not allow arbitration of questions of contract termination. Accordingly, the District Court correctly decided that it should decide the contract-termination issue.

The District Court proceeded to interpret the duration clause. Article 2, Section 3 of the collective-bargaining agreement is ambiguous on its face. Purex argues that the clause requires the five-day termination notice to be given after the June 30 termination date, while the Union counters that the clause contemplates earlier delivery of the five-day notice, and simply provides that the contract shall terminate no earlier than its anniversary date. Purex presented evidence that the Union's past practice under previous collective-bargaining agreements with comparable duration clauses conformed to Purex's interpretation of the instant duration clause. However, the District Court, after examining the history and language of the collective-bargaining agreement, concluded that the Union's notice substantially complied with the agreement.

■ We agree with the District Court's assessment of Purex's likelihood of success on the merits. The Union's letters of June 24 and July 6, 1982, taken together, certainly communicated to Purex that the Union was unwilling to continue under the terms of the old agreement and would not accept Purex's proposals for the new agreement. Even though the July 6 letter did not specifically speak in terms of terminating the old agreement, it fulfilled the purpose of the notice provision, especially when viewed in conjunction with the June 24 letter.

### III.

We affirm the District Court's decision not to grant a *Boys Markets* injunction against the Union's strike. The District Court correctly determined that the underlying dispute was not arbitrable and that Purex had little chance of success on the merits of its claim of violation of the no-strike clause, because there was no collective-bargaining agreement in effect when the strike began.

Affirmed.

McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I fully agree with the first part of the panel opinion holding that the district court correctly refused to issue a *Boys Market* injunction. I concur in the affirmance of the judgment of the district court on that ground.

I disagree with the panel opinion in the question of the termination of the collective-bargaining agreement. As noted by the panel opinion, the district court did not have to reach this question to deny injunctive relief. I agree that the district court correctly decided that this question was a matter for judicial determination and not for arbitration. However, I would interpret the duration clause of the collective-bargaining agreement to require that the five-day termination notice be given after the June 30 termination or anniversary date and would find that the July 6 notice did not comply with the purpose of the notice provision.